The State ex rel. Lightfoot vs. McCabe and others.

THE STATE EX REL. LIGHTFOOT, Appellant, vs. McCABE and others, Respondents.

*September 24 — October 15, 1889.*

HIGHWAYS. *(1, 2) Private way: Dedication: Public user: Evidence: Expenditure of highway taxes. (3) What highways may be ascertained, described, etc.*

1. The use of a private way by the respective owners of the land upon which the easement is granted and that to which it is appurtenant, and by their tenants and persons having business with them, is no evidence of a dedication to the public or of a public user.
2. No dedication to the public use being shown, and no public user for the period required by sec. 1294, R. S., the expenditure of highway taxes upon a private road does not render it a highway.
3. *Quære*, whether subd. 2, sec. 1223, R. S., as amended by ch. 103, Laws of 1885, applies to highways by dedication or prescription.

APPEAL from the County Court of *Winnebago* County. On petition of the relator, *Frederick Lightfoot, Jr.*, for a writ of *mandamus*, an alternative writ was issued out of the Winnebago county court, directed to the respondents, the supervisors of the town of Winneconne, commanding them to proceed to cause a certain alleged public highway, described in the petition, to be ascertained, described, and entered of record in the proper town clerk's office, pursuant to sec. 1223, R. S., as amended by ch. 103, Laws of 1885, or show cause to the contrary before said court at a time therein specified. The supervisors made return to such

writ, denying that the *locus in quo* is a public highway. The matter was heard by the court on the issue thus made by the petition and return.

The testimony introduced on the hearing showed that in 1857 one Joseph Langley sold and conveyed to Frederick Lightfoot, the father and grantor of the relator, the W. $\frac{1}{2}$ and N. E. $\frac{1}{4}$, all in the S. W. $\frac{1}{4}$ of section 23, in township 19 N., of range 15 E. The conveyance contained the following grant: " Together with a right of way running north and south through the center of the west half of the northwest quarter of said section, for the free passage at all times of the said party of the second part, his heirs and assigns, their servants and families, cattle, horses, and other animals, carts, and vehicles, to and from the premises above described." The lands over which such right of way was thus granted, belonged to said Langley. This right of way commenced at the north line of said W. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 23, extended north one half mile, and terminated in a public highway leading from Winneconne to Oshkosh. It intersected no other highway. The relator owns the land thus conveyed to his father by Langley to which such right of way is appurtenant. The proof as to the extent this right of way has been traveled and used is stated in the opinion.

In or about the year 1860, and in several years between that year and 1885, the relator and his father were permitted by the supervisors of the town, or the overseers of the highway of the road-district in which such lands were situated, to work out their highway taxes, or portions thereof, on such right of way. In 1880 or 1881 the overseer also furnished plank for a culvert, and directed gravel to be hauled thereon.

The court found from the evidence that the *locus in quo* is not a public highway, as claimed by the relator, and thereupon gave judgment denying the peremptory writ of

*mandamus* prayed for, and dismissing the petition and alternative writ. The relator appeals from the judgment.

*James H. Merrill*, for the appellant.

For the respondents there was a brief by *Bouck & Hilton*, and oral argument by *Gabe Bouck*.

LYON, J. Counsel for the relator asserts in his brief that under the laws of this state there are no private roads, and cites *Osborn v. Hart*, 24 Wis. 89, to sustain his position. This is a misapprehension of that case. It was there held that a statute which provided that private roads might, on certain conditions, be laid through lands without the consent of the owner thereof, was invalid, because it attempted to authorize the taking of private property without the consent of its owner, for the mere private use of another person. The case does not hold that a private way may not be created by grant or established by prescription.

The grant by Langley to Frederick Lightfoot, Sr., was of a private way only, for it is limited to the use of the grantee, his heirs and assigns. The grantor remained the owner of the fee, subject only to the easement thus granted, and has the undoubted right to use the land for travel or any other lawful purpose, so long as he does not interfere with his grantee's use of the right of way.

We are aware of but two methods by which this private way could be converted into a public highway. These are: (1) By dedication of the *locus in quo* by the owner to the public use as a highway, and the acceptance thereof as such by the public; or (2) by user thereof and working the same as a public highway for ten years.

1. There is no testimony whatever tending to show any act of dedication on the part of Langley or any subsequent owner of the land. True, such owners and their tenants have used the private way freely, as they lawfully might; but this is not dedication thereof to the public use. Such

user by the owner is entirely consistent with, and is referable exclusively to, his ownership of the soil, and furnishes no evidence whatever of an intention to dedicate a way to public use. The proofs failed to show the *animus dedicandi*, which is essential to a valid dedication. *Tupper v. Huson*, 46 Wis. 646. No dedication being proved, it is quite immaterial that the highway taxes were expended on this private road.

2. Had the road been used and worked as a public highway ten years before this proceeding was commenced? R. S. sec. 1294. There is but little testimony showing any use of the road except by the respective owners of the land upon which the easement is granted and that to which it is appurtenant — that is to say, by Langley and his grantees, and Frederick Lightfoot, Sr., and his grantee, the relator, and by their servants and tenants and those having business with them. Such use must be referred to the grant of a private way, and is no evidence of a *public* user. But little other use of the road was proved, and we cannot say from the testimony that any use of it for ten years was established inconsistent with the private easement. The way being a private one in its inception, nothing less than a clear, unmistakable public user thereof would operate to enlarge the private easement granted by Langley to one which may be used and enjoyed by the public at large.

The required user failing, it again becomes immaterial that highway taxes were expended upon the road. By allowing this to be done, the town officers exceeded their lawful powers, but certainly they did not thereby convert a mere private easement into a public one, without the consent of Langley or his grantees.

3. There is probably another impediment to the awarding of a peremptory *mandamus* in this case, which would not be removed were the testimony much stronger for the relator. The rule is elementary that to authorize the grant-

ing of a *mandamus* the legal right should be clear. It is very doubtful whether the statute upon which this proceeding is founded reaches the case of a highway by dedication or prescription. That statute makes it the duty of the supervisors to cause such of the roads as have been laid out and used as highways, and all legal highways not fully or sufficiently described or recorded, to be ascertained, described, and entered of record in the town clerk's office. R. S. sec. 1223, subd. 2, as amended by ch. 103, Laws of 1885. It would not be an unreasonable construction of the above statute to hold that its operation is confined to highways imperfectly described or recorded, to the exclusion of those resting in dedication or prescription. However, we do not here determine this proposition. We only say the true construction of the statute is not clear.

It follows from the foregoing views that the judgment of the county court must be affirmed.

*By the Court.*— Judgment affirmed.