STATE, Respondent, vs. TOWN BOARD OF THE TOWN OF TOMAHAWK LAKE and others, Appellants.

*January 13—February 8, 1927.*

*Highways: User by public for twenty years: Sufficiency: Permissive use of tote road in Northern Wisconsin.*

1. The mere naked user of a road for twenty years is insufficient to establish a public highway in the absence of circumstances

giving rise to a presumption of an intent on the part of the owner to dedicate the road as a public highway.  pp. 194–196.

2. The use of an old skidding and tote road through wild lands in the vicinity of lakes is *held* permissive and therefore is insufficient to establish a public highway by user or prescription. p. 196.

3. The attempt of a town board to lay out a highway passing through the inclosure of a state tuberculosis camp is absolutely void under sec. 80.03, Stats., prohibiting the laying out of a highway through an inclosure used for charitable purposes. p. 196.

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge.  *Affirmed.*

This is an action brought by the State against the *Town Board of Tomahawk Lake* in Oneida county, and others, for a judgment determining that a certain road in question in said town is not a public highway, and for an injunction restraining the defendants from entering upon the lands of the State through which said road runs or extends for the purpose of opening or establishing a public highway thereon. The question involved is whether an old logging and tote road is a lawful public highway either by user or by certain proceedings taken by the town board pertaining to laying out a highway along the course of said road.  The facts as found by the court may be summarized as follows:

On December 31, 1907, the State, by deed from Bradley & Kelley Land Company, became the owner of government lots 1 and 2 of section 8, and government lots 5 and 8 of section 9, in township 38 north, range 7 east.  Such lands were acquired for the purposes of reforestation by the Forestry Department of the State.  In 1914 and 1915 the State constructed on government lot 2 of section 8 aforesaid a number of necessary buildings and established an institution known as Tomahawk Lake Camp for rehabilitating patients convalescing from tuberculosis, and has ever since maintained and operated said institution.  Before the establishment of such camp the lands in question, and other surround-

ing lands, were wild and unoccupied. It is reasonably neces-
sary for said camp to use and occupy all of lots 1 and 2 of
section 8 aforesaid, and at least a portion of lots 5 and 8
of section 9 aforesaid, in order to attain the objects of said
institution.

The Bradley & Kelley Land Company owned all of said
lands during and prior to the year 1890, and either that com-
pany or a subsidiary thereof owned and operated a sawmill
at the eastern extremity of Tomahawk Lake, and pine timber
for the mill in question was taken from the lands in question.
Said company, for the purpose of carrying on its logging
operations in the years 1892 and 1893, maintained a logging
camp at the western extremity of lot 1 of section 8 aforesaid,
and for that purpose constructed and occupied a number of
buildings and cleared land for camp, garden, and yard, and
cut and opened up skidding and logging roads from said
camp upon various parts of the lands here in question, and
opened a tote road from the camp to Tomahawk Lake sta-
tion. Said tote road extended across the lands here in ques-
tion substantially in the course and direction maintained by
the present road involved in this action. Previous to the
time of the building and use of the logging camp in question
there were no roads of any kind upon said lands.

In the year 1891 one Woodzicka settled upon a homestead
on the western side of the thoroughfare at the west side of
lot 1 of section 8 aforesaid, and in 1893 or 1894 he and his
family went to live upon said homestead. Beginning about
1895 or 1896 the Woodzickas began the business of receiv-
ing and entertaining fishermen and other sportsmen and
gradually developed a so-called summer resort, which has
been ever since maintained on the western shore of the thor-
oughfare in question. They and their guests and other
hunters and fishermen made occasional use of the road run-
ning from the old logging camp toward Tomahawk Lake
station, and such use has continued down to the commence-
ment of this action. The western end of said road was at

Tomahawk Lake, and there was no eastern terminus until in the year 1899 the town of Hazelhurst caused to be surveyed and laid out a road between Hazelhurst and Tomahawk Lake station. When such road was laid out it became the eastern terminus of the road here in question. The Woodzicka resort at all times could be approached by a road from the west or by the water route of the lake, or by the road here in question. The road here in question was at first a skid road and tote road, very difficult of use, and was used only by hunters, campers, fishermen, and persons going to or from the Woodzicka resort, until after the establishment of the Tomahawk Lake Camp by the State. No work was done upon it by the town excepting that in the year 1906 one Rice asked permission of the town board to cut some of the brush out of the road, and was granted permission to do so, and was paid therefor by the town, and about 1922 the town superintendent of highways looked over the road in question occasionally and carried a spade and filled some ruts or holes therein. Said work in each instance was unimportant and without any knowledge or action on the part of the town board in respect to the road or in respect to directing the work to be done thereon.

In the year 1913 the State, acting through its Forestry Department, cleared out the road here in question for the purpose of making a fire line at which to stop any possible forest fires, but no large trees were cut.

After the establishment of Tomahawk Lake Camp the State cleared and widened and graded the road leading from the Hazelhurst-Tomahawk Lake road to the camp buildings, and later cleared and graded the road therefrom to the westward extending to the lake, and claimed the same as an institutional road. The clearing at the old logging camp was put under cultivation and used for the raising of vegetables and other products for the camp. Prior to the improvements made by the State on the road in question, said road was similar to many other old logging and tote roads on other

wild lands in the vicinity and common upon all cut-over un-occupied lands in Northern Wisconsin.

On July 5, 1919, the *Town Board of Tomahawk Lake,* in which town the land in question was then located, proceeded upon petition and in opposition to the objection of the State to make an order purporting to lay out road number 4 past the State Tuberculosis Camp, beginning at the point where the present traveled road from the State Camp intersects the Hazelhurst-Tomahawk Lake road, thence in a westerly direction along the present traveled road to the thoroughfare between Big Tomahawk and Little Tomahawk lakes.

On October 4, 1919, at the request of the superintendent of the State Camp, said town board adopted a motion that "We rescind our order of July 5th laying out as a public highway road number 4 which passes the State Tuberculosis Camp." On September 29, 1925, pursuant to due petition and notice, two members of the town board of the defendant town met at the time and place designated in the notice and made an order that "A highway be and the same is hereby laid out in said town as follows, to wit: Beginning at a point 175 feet back from the lake shore on road number 3, thence running in a southwesterly direction 600 feet more or less, thence turning west 400 feet more or less to the lake front, all being in lot 1, section 8, town 38 north, R. 7 E." At the same meeting the town board awarded the state board of control $5 as damages for going through the land.

On November 7, 1925, the town board adopted a motion that one Montgomery be instructed to brush out and clear the road here in question, and some work was done by him in the fall of 1925 after the commencement of this action but without the knowledge of any of the representatives of the State.

As conclusions of law the court found that the beginning of the use of the road in question by the Woodzickas and by hunters, fishermen, and campers was not hostile or adverse

to the owner, Bradley & Kelley Land Company, but was in accordance with the custom of using like roads through un-inclosed wild lands in Northern Wisconsin, and must be considered to have been permissive. No right of way by prescription was acquired prior to the date at which the State acquired title to the lands. Neither was the said road used and worked as a public highway for ten years or more before the State acquired said title.

No right of way by prescription or adverse user has been acquired as against the State of Wisconsin.

That the attempt of the town board in July, 1919, to lay out a public highway over said right of way was wholly void for the reason that the road so attempted to be laid out would pass through the yard and inclosure of the State Tuberculosis Camp which is devoted to educational and charitable purposes; that the attempt of the town board in October, 1925, to lay out a highway over that road was void for the same reason, and for the further reason that the description of the proposed extension of said road was so uncertain and indefinite that it constitutes no exact location of the proposed extension.

That the plaintiff is entitled to judgment determining that the road in question is not a public highway, and is entitled to an injunction against the defendants restraining them from entering upon the premises here in question for the purpose of opening and establishing a public highway thereon.

From the judgment entered upon these findings of fact and conclusions of law the defendants appealed.

The cause was submitted for the appellants on the brief of *A. J. O'Melia* of Rhinelander, and for the respondent on that of the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general.

OWEN, J. If a public highway exists over the lands or along the route in question it must have come into existence

either by user or by lawful proceedings of the town board establishing and laying out a public highway thereon. The trial court, in a very cogent opinion, disposed of the prescriptive feature of the case in the following language:

"The court is satisfied that the road or driveway here in question originated with the logging camp of Bradley & Kelley along in the early 90's—probably in 1892. It was a combined skidding road and tote road. The use which other people made of it thereafter was just such use as is commonly made by all sorts of people here in Northern Wisconsin, who use any and every old logging road, tote road, or other way which they may find in wild lands, and particularly in the vicinity of lakes.

"I am very clear that under the decisions of *Wiesner v. Jaeger,* 175 Wis. 281, 184 N. W. 1038, and *Bassett v. Soelle,* 186 Wis. 53, 202 N. W. 164, such user by others than employees of Bradley & Kelley must be deemed to have been permissive and not adverse or hostile. While this court might disagree with the opinion in *Wiesner v. Jaeger,* if in position to do so, there could be no disagreement with the opinion in *Bassett v. Soelle.*"

The court then quotes from *Bassett v. Soelle,* 186 Wis. 53, 202 N. W. 164, and continues:

"Applying these principles, it must be held on the proof here that such use of the road in question as was made by the Woodzickas, their friends and guests and hunters, fishermen and campers, was permissive and not adverse. It certainly began in that character, and the evidence indicates no point at which the use was turned into an adverse use, unless it was when the town board attempted to lay out a public highway in 1919."

Counsel for appellants concedes that there is little material dispute concerning the facts, but disagrees with the conclusion of the trial court that the use was not adverse, and maintains that the use was one of necessity by not only the Woodzickas but by other homesteaders in that vicinity. He seeks to distinguish the case of *Bassett v. Soelle* from the present case on the ground that it was a private way and not a public way that was involved in the case of *Bassett v. Soelle.*

State v. Town Board, 192 Wis. 186.

Nowhere in the books do we find a clearer discussion of the elements necessary to constitute a highway by user than is to be found in the dissenting opinion of DIXON, C. J., in *Hanson v. Taylor,* 23 Wis. 547. He there points out that "Title acquired by prescription and title acquired by user, or adverse user, as it is commonly called, mean the very same thing. Prescription is defined to be a mode of acquiring title to an incorporeal hereditament by long and continued usage." He then makes plain that in addition to long and continued user an intention on the part of the owner to dedicate the soil must positively concur. He says: "The intention to dedicate, *animus dedicandi,* on the part of the owner of the soil, constitutes in every case the very foundation of the right; and there can be no title by prescription or adverse user without it." After quoting from *Barker v. Clark,* 4 N. H. 380, 383, and *Warren v. Trustees of Jacksonville,* 15 Ill. 236, he says:

"These extracts sufficiently illustrate the doctrine, everywhere admitted, that dedication by the owner of the land is the true and only source of every title in the public to a highway claimed by prescription or adverse user. Angell on Highways, § 131; 42 Me. 23. Within the period prescribed by law in which title by user or prescription may be acquired, which is commonly twenty years, though in this state ten years, the use of the land by the public may, upon the circumstances of the particular case and in view of the nature and situation of the country, furnish evidence of an intention to dedicate; but after that period has elapsed it becomes conclusive evidence of such intention, or of a dedication which cannot then be recalled, or, as expressed in many of the authorities, of a grant the written evidence of which is presumed to have been lost or destroyed by lapse of time. But into every such case there enters, as the starting point and foundation of the public right, the element of knowledge, on the part of the owner, of the use made by the public of his land, and of his assent thereto, which assent must be either expressed or implied from such clear and unequivocal acts and conduct, or strong circumstances of approbation on his part, as leave no doubt of his intention to dedicate or give the land to public use."

While the opinion from which we are quoting was a dissenting opinion, there is no doubt of its soundness so far as it deals with the fundamentals of the doctrine of prescription. While a majority of the court arrived at a different conclusion in that case, that conclusion was based, to a large extent, if not entirely, upon the provisions of sec. 85, ch. 19, of the Revised Statutes of 1858, which declared that "all roads not recorded which shall have been used as public highways twenty years or more . . . shall be deemed public highways." The majority of the court held that under this statute mere user of the road for the requisite length of time, irrespective of the question of adverse user, constituted the road a public highway. That statute was repealed in 1878 and with its repeal went to a large extent the force of *Hanson v. Taylor* as an authority. It must be admitted, though we do it with regret, that there are other cases decided by this court which seem to hold that the mere naked user of a road for twenty years is sufficient to establish such road as a public highway. *Chippewa Falls v. Hopkins,* 109 Wis. 611, 617, 85 N. W. 553, and cases there cited. We can but regard the doctrine of those cases as unsound. They ignore entirely the very fundamental proposition that the user must be adverse or under such circumstances as will give rise to a presumption of an intention on the part of the owner to dedicate the road as a public highway. Those cases were not followed in *Bassett v. Soelle,* 186 Wis. 53, 202 N. W. 164, where the doctrine was recognized that the use must be under such circumstances as to give rise to a presumption of an *animus dedicandi* on the part of the owner. Some of the cases laying down the broad doctrine that mere user alone for a period of twenty years is sufficient to establish a highway were referred to, and it was there said that the cases there referred to did not relate to uninclosed lands. However that may be, the principle stated in *Chippewa Falls v. Hopkins, supra,* for instance, is sufficiently broad to include

uninclosed lands, because it leaves out of all consideration the question of whether the use was adverse or whether it was under such circumstances as to raise the presumption of *animus dedicandi*. The necessity of an intention on the part of the owner to dedicate is clearly recognized in *Bassett v. Soelle,* and it is there said: "Outside this jurisdiction the decisions almost universally hold that mere use of a track or way over uninclosed lands, and especially woodlands, for the statutory period does not raise a presumption that the use is adverse to the rights of the owner. Indeed, there seem to be very few states in which a contrary rule prevails." The reasons for the distinction between the rule which should govern in the case of the use of a way over inclosed and uninclosed land were there pointed out, and it was said: "It would be a harsh rule that the owners of such lands must stand guard over them or be deprived of valuable rights by those who have taken advantage of liberal treatment." It might have been said, also, that there is no consideration of morals or of public policy which requires the penalizing of that neighborly consideration which permits or acquiesces in the use of a way over wild and uninclosed lands in a wild and undeveloped region. The law affords ample opportunity for the establishment of highways where needed. It is not necessary to penalize a considerate owner who has permitted travel over his uninclosed lands in order that the neighborhood may have highways. The town authorities are clothed with power to lay out highways wherever public necessity requires. While it may involve some public expense, moral considerations require that such expense be borne by the public rather than that fanciful considerations be invoked to impose a burden upon a landowner by reason merely of his neighborly indulgence. We deeply feel that the doctrine of *Bassett v. Soelle* is not only grounded in every consideration of justice, but that it has the support of well-nigh universal authority outside this jurisdiction, and that case must be held

to state the rule now obtaining in this jurisdiction with reference to private ways or highways by user over unoccupied and uninclosed lands.

The trial judge has long been a resident of Northern Wisconsin and is thoroughly familiar with the customs of that country. In his opinion he said: "It was a combined skidding road and tote road. The use which other people made of it thereafter was just such use as is commonly made by all sorts of people here in Northern Wisconsin, who use any and every old logging road, tote road, or other way which they may find in wild lands, and particularly in the vicinity of lakes." Such use, under such circumstances and pursuant to such customs, raises no presumption of an intention on the part of the owner to dedicate the soil for the purposes of a highway, and the conclusion of the trial court that no highway resulted by user or prescription cannot be disturbed.

The only further question remaining is whether the premises in question became a highway by reason of the attempt of the town board, either in 1919 or 1925, to lay out a highway along that route. Sec. 80.03, Stats., provides that "No public highway shall be laid out through or upon any . . . yard or inclosure used for educational or charitable purposes." It is undisputed that the route of this alleged highway passes through "the yard and inclosure of the State Tuberculosis Camp which is devoted to educational and charitable purposes." By the provisions of the statutes the town board was prohibited from laying out a highway through this camp, and its proceedings to that end were entirely void.

*By the Court.*—Judgment affirmed.