EUGENE COUTURE, TATUM'S OCEAN PARK COMPANY, THE MIAMI BEACH BAY SHORE COMPANY, AND OTHERS, *Appellants,* v. THE COUNTY OF DADE BY J. W. CAREY, AND OTHERS, AS COUNTY COMMISSIONERS, *Appellees.*

Division A.

Opinion Filed February 26, 1927.

1. A Bill in Chancery should bear some evidences of authenticity such as the signature of counsel or the complainant, or its allegations verified by the supporting affidavit of some person in complainant's behalf.

2. If a roadway is a public highway any wilful obstruction of it by a person with the intention of preventing its use by the public is without authority of law whether he has knowledge of the means by which it became a public highway or not.

3. An allegation in a bill to enjoin the obstruction of a public road that the highway in question is a public one is a sufficient allegation of the ultimate fact.

4. While the Chancellor's findings of fact in an equitable cause upon the merits may not appear to be clearly er-

roneous, the decree may nevertheless be erroneous as applying a rule of law or equitable principle as applicable to the facts.

5. There are certain methods by which the public acquires the right to pass and repass over a way thus establishing a highway, viz: by prescription or long user; by statutory proceedings in the exercise of the right of eminent domain, and by dedication to the public by the owner of the soil with the sanction of the public authorities.

6. The establishment of a public highway by prescription or long user is based on the presumption of a prior grant either of an antecedent exercise of the power of eminent domain by proper authorities or a prior dedication of the land to public use. In any case it is the adverse use and possession which establishes the highway.

7. A mere expenditure of public money upon a road under an agreement between the owner of the land and the public officials is not in itself sufficient to establish a highway.

8. A written agreement between the owner of land and public officials that a certain strip of land may be used temporarily as a way cannot be construed to be a dedication of the way to public use permanently as a highway in contradiction of the terms of the agreement.

9. Until a roadway has become a public highway by the means by which public highways are established the public has no easement over the land traversed by it unless it has been given or consented to by the owners of the soil.

10. When the owners of the soil consent to the use of the land as a roadway upon conditions and stipulate that upon the fulfillment of the conditions by the owners of the soil the right to use the way as a road shall cease and such conditions are accepted and agreed to by the approporiate public officers the owners of the soil may close the way upon the fulfillment of the condition by them.

An Appeal from the Circuit Court for Dade County; H. F. Atkinson, Judge.

Order reversed.

*Price, Price, Neeley & Kehoe,* for Appellants;

*A. B. & C. C. Small,* and *Shipp; Evans & Kline,* for Appellees.

ELLIS, C. J.—The County Commissioners of Dade County, in the name of the County, exhibited their bill in Chancery in the Circuit Court for that County against Eugene Couture, C. J. A. Dittmar and E. L. Watson and eighteen other persons, alleged to be residents of the County; Herman Harvey and one hundred and nine other persons, whose places of residence were alleged to be unknown, and against Tatum's Ocean Park Corporation and twelve other corporations, making one hundred and forty-one defendants.

The purpose of the suit was to obtain injunction restraining the defendants from obstructing a road alleged to be a public highway known as the Ocean Beach Road, under the control and management of the County, to declare the title of the road to be in the County, and that the County's right to the maintenance and continuance of the road as a "common highway" be quieted, and that the title and right of the defendants in the land over which the road was constructed be decreed to be inferior to that of the County.

According to the record, as certified to us by the Clerk of the Court under the court's seal, the bill was neither signed by counsel nor by any one of the County Commissioners, nor were its allegations verified by any person in behalf of the complainants. It appears to be without any authenticity whatsoever. The defendants, however, and the learned

judge before whom the cause was heard, as well as counsel for all parties, treated it as if it possessed those evidences of verity which the rules require a bill in Chancery for such extraordinary relief to possess.

A temporary injunction was granted restraining the defendants from obstructing the road described in the bill and ''from continuing all activities the natural result of which will amount to an obstructing'' of the road. After demurrers to the bill were overruled, answers filed and much testimony taken upon a motion to dissolve the injunction, the Chancellor, by order dated April 25, 1925, overruled the motion to dissolve and continued the temporary injunction in full force and effect pending the further order of the Court.

The defendants appealed from that order three months afterwards.

The pleadings in the case, consisting of amended bill, demurrers both special and general, and answers are lengthy; the bill and answers abounding in matters of detail. To undertake to give the substance of each allegation and averment in the pleadings and follow that with a discussion of the evidence pertaining thereto we deem to be unnecessary. The interlocutory order from which this appeal was taken sets forth succinctly the facts which the Chancellor found to be established and which he conceived were sufficient to support the order. Our review of the evidence in the case does not lead us to the conclusion that it clearly does not support such facts though the deductions therefrom do not seem to be so clearly justified.

The County's case, as set out in the amended bill of complaint, rests upon the allegations that a public highway extending from a point on the northern boundry line of the city of Miami Beach northward for about seven miles to a point about five hundred feet south of the northern line

of Section 14, Township 52 South, Range 42 East has existed for many years and been maintained by the County. The nothern boundry line of the city of Miami Beach is the half section line of Sections 22 and 23 of Township 53 South Range 42 East. See Acts 1917, Chapter 7672. That the road traversed lands owned by the defendants, or in which they were interested, some in one part of the area and others in other parts; that barriers and other obstructions had been placed at different points along the highway; The Miami Beach Bay Shore Company, one of the defendants, had obstructed the road as it passed through one or more of its subdivisions just out of Miami Beach and that it has laid out and platted other subdivisions in Section 14 of Township 53 South, Range 42 East, and that it proposes to "barricade and cause the discontinuance" of the road at that point; that Tatum's Ocean Park Company, one of the defendants, has platted portions of Section 2 of the same Township and Range as well as portions of Sections 35 and 26 of Township 52 South, Range 42 East, or will do so in the near future as to lands in the latter section through which the road runs, and that lands in Section 23 of the same township and range have also been platted by the same corporation as well as land in Section 14 of that township and range.

It is alleged that the purpose of these plats of subdivisions is to offer the lots shown thereon for sale and that the lots as shown by such plats extend across the highway to the Atlantic Ocean; that many persons have become interested by purchase in many of such lots and the names of such persons are set out in the bill as parties defendant; that the effect of such platting of the land and sale to individuals is to obstruct the road and deny to the public access to the Atlantic shore as well as to destroy the scenic beauty of the driveway.

It is alleged that Tatum's Ocean Park Company has been constructing and has practically completed a road running north and south through the "said properties herein above described", but that the road is a great distance from the Atlantic Ocean. That the corporation intends to obstruct and discontinue the use of the Ocean Beach Road.

Like allegations are made as to the activities of the Normandy Beach Development Company on lands in Section 35, Township 52 South, Range 42 East, through which the road passes. That all of the defendants are acting in collusion with one another in the effort to obstruct and discontinue the Ocean Beach Road. That all of such activities are being carried on without the consent of the County obtained through its Board of Commissioners.

There are many other allegations in the bill as to the nearness of the Ocean Beach Road to the Atlantic Ocean; its beauty on account thereof, and the easy access which it affords to the ocean by travelers on the road. There are also allegations as to the use of the road by the public; the construction of it with county funds and maintenance by the County and knowledge of these facts on the part of defendants.

If a roadway is a public highway any wilful obstruction thereof by a person with the intention of preventing its use by the public is without authority of law whether he has knowledge of the means by which it became a public highway or not. The allegation therefore that Ocean Beach Road is a public highway is a complete allegation of the ultimate fact and need not be reinforced by allegations as to how it became such.

The defense set up by the answers consists of a denial that the Ocean Beach Road, between the points named in the bill, is or ever has been a public highway.

This position is supported by averments of many facts,

and it appears from the evidence that such averments were amply supported by the evidence in which there was little if any material contradiction.

It is averred: That the County never acquired the right of way by purchase, nor by condemnation proceedings, nor by voluntary conveyance for public use, nor by acquiescence in its use as a permanent public highway, nor by prescripiton from long use by the public; That the construction of the road was by private persons for their own convenience principally and for the convenience of others under conditions agreed upon by the owners of the land and the County through its Commissioners that the County would repay to the owners the cost of construction from public funds, and that upon the completion of another road to the westward by the owners of the property through the same territory of equal or better grade of road construction and equal width to that of the old road on the dedication of such new road to the public the old road should be discontinued and revert to the owners of the land through which it passes.

It is averred that the land through which the Ocean Beach Road passes is privately owned property; that a strip of land extends the entire length of the road on the eastern side thereof to the high-water mark of the ocean and that it is owned by the defendants, and that no traveler upon the road could go to the beach of the ocean without passing over and becoming a trespasser upon such private property. That the land is now valuable as residence property and the defendants are seeking to develop it for such purposes. That the new road has been completed by the property owners; that it connects with the old road on the south and north and has been set apart for public use and title to the right of way offered to the County.

The answer of Tatum's Ocean Park Company and Tatum Brothers Company, which two corporations own the greater

portion of the lands through which the old road passes, avers that they have not at any time heretofore closed the road ''as across their premises'' or ''have ever in any manner placed any barricade across the same or in any way whatsoever interfered with travel thereon.''

It is averred, however, that they are building a new hard-surfaced road running approximately from two hundred to two hundred and fifty feet west of the old road, which they built through their property and they have tendered to the County the right of way as to the new road. The answer avers that because of the compliance by the defendants with the terms of the contract to which reference has been made they have a right to close the old road.

The contract to which the answers refer consists of a resolution by the Board of County Commissioners for Dade County, dated September 11, 1917, and is as follows:

''Miami, Florida, September 11th, 1917.
''The Board of County Commissioners met in special session at their office at the Court House and were called to order at 10:30 A. M. by Chairman E. D. V. Burr, with Commissioner R. H. Rice, Preston H. Lee, W. J. Tweedell and Deputy Clerk W. E. Norton present.

''Mr. B. B. Tatum, representing the Tatum Bros. Real Estate and Investment Co., and other property owners along the proposed road on the Ocean Beach from the J. H. Snowden place north to Fulford, appeared before the Board and stated that they had reconsidered their action in withdrawing a former proposition for a right of way for said road on account of petitions filed with the Board requesting the Board to accept the proposition as formerly made by the Tatum Bros. Real Estate & Investment Co., as to a right of way and stated that they were willing to grant a right of way wherever the Board might designate along the ocean front, with the privision that whenever

a right of way of the same width and paralleling Indian Creek and Biscayne Bay is deeded to the County, with the same proportion of said right of way paved with the same material and in every way in as good conditions as the road constructed by the County along the ocean front without cost to the County, that then the ocean front road right of way shall revert to the original owners, provided the road shall at all times be connected up so as to make one continuous road at all places as good as the main road constructed by the County.

"Moved by Commissioner W. J. Tweedell that the proposition of Tatum Bros. Real Estate & Investment Co. be accepted, motion seconded by Commissioner R. H. Rice and upon a vote was duly carried.

STATE OF FLORIDA,
COUNTY OF DADE,

"I, Ben Shepard, Clerk of the Circuit Court in and for Dade County, Florida and ex-officio Clerk of the Board of County Commissioners, do hereby certify that the above and foregoing is a true and correct excerpt of the minutes of the Board of County Commissioners, as appears of record in Minute Book "F" on page 511.

"IN WITNESS WHEREOF, I have hereunto set my hand and the official seal of the Board of County Commissioners this the 13th day of December, A. D. 1923.

Ben Shepard, Clerk
By E. E. Mitchell, D. C."

The evidence in the case is not sufficient to support the contention that the right of way along which the Ocean Beach Road was built was acquired by the County by purchase, or by condemnation, or by gift or dedication, nor by prescription or long user by the general public; indeed the learned Chancellor before whom the case was heard upon the motion to vacate the temporary injunction

did not find such facts or either of them to exist and expressly declined to consider the question of title to the roadway. His decretal order rested upon the proposition that as the County was in possession of the road when the suit was begun under the contract with Mr. Tatum, acting for his own companies and other land owners, and was then being used as a highway by the public the defendants were not within their rights to obstruct it and a court of chancery would enjoin any obstruction of it.

In one paragraph of the opinion filed by him it is stated that the contract, between Mr. Tatum, acting in his own interests and that of other land owners, and the County for the construction of the road was a sufficient ''dedication upon the part of the land owners to justify the County Commissioners in entering into contracts for the construction of the road and it appears from the evidence that the road was actually constructed with county funds and county funds have been used and expended for the maintenance thereof''. In another part of the opinion it is stated that: ''whether the proposals in these communications and the acceptance by the Board constitute a contract is immaterial here'' and that persons dealing with Boards of County Commissioners are charged with notice of the limitations imposed by law upon the contractual power of such officers and that ''contracts entered into with them in violation of law or beyond the powers of such boards and officers are ultra vires and void''. That the land owners ''knew or should have known that a subsequent board might refuse to carry into effect what it considered an unenforceable contract.''

To these deductions we are unable to agree. In the first place, the law applicable to public highways presupposes the existence in fact of such a way. The existence of the highway must first be determined before it can be said

that the law on the subject of highways is applicable. In other words, a roadway is or is not a public highway.

There are certain methods by which the public acquires the right to pass and repass over a way, thus establishing a highway. Those methods are by prescription or long user as such; by statute or statutory proceedings in the exercise of the right of eminent domain or by dedication to the publc by the owner of the soil with the sanction of the public authoritites. See Ryan v. Monongalia County Court, 86 W. Va. 40, 102 S. E. Rep 731; Thrasher v. Burr, 202 Ala. 307, 80 South. Rep. 372; Bellview Cemetery Co. v. McEvers, 174 Ala. 457, 57 South. Rep. 375; Southern R. Co. v. Combs, 124 Ga. 1004, 53 S. E. Rep. 508.

The establishment of a public highway by prescription or long user is based on the presumption of a prior grant either of an antecedent exercise of the power of eminent domain by the proper authorities or a prior dedication of the land to public use; in any case it is the adverse use and possession which establishes the highway. Road District Commission v. Swain, 168 Ill. App. 674; Smith v. Nofsinger, 86 Neb. 834, 126 N. W. Rep. 659; Walcott Tp. v. Skauge, 6 N. D. 382, 71 N. W. Rep. 544.

The element of adverse possession and use by the people of the road in question is wholly lacking but the contrary is conclusively shown, viz: that the use was by the consent of the land owners to be terminated upon the happening of a certain event and this with the consent and approval of the county officials.

The mere expenditure of public money upon the road under the agreement is not in itself sufficient to establish the highway.

Neither do we agree to the proposition that the agreement between Mr. Tatum and the Board of County Commissioners may be considered void and without authority of law for one purpose, but valid as a dedication of the

road to public use in direct contradiction of its very provisions.

We are also of the opinion that the agreement is itself a complete refutation of the proposition that prior thereto the public had acquired a right to the use of the road, not then constructed, by adverse user.

The fact that the road was being used by the public under the agreement referred to at the time of the alleged obstruction of it by the defendants, or some of them, does not establish its character as a public highway; not only because the element of long adverse use was lacking but because such use was with the consent of the land owners on conditions agreed to by the authorities.

As to Tatum Brothers Corporation and many others who are made defendants, the evidence does not support the allegation that they are engaged in any activities resulting in an actual obstruction of the so-called public highway.

The term "possession of the highway" by the County or the people thereof is a misleading phrase because it may signify that as the public uses a road it may be said to be in the possession of it. But mere user of a roadway does not alone establish its character as a public highway. Having once become a public highway by the means by which they are established its status is fixed and remains whether used much or little by the public until it is actually abandoned, but until it does become a public highway the public has no easement over the land traversed by it unless it has been given or consented to by the owners of the soil.

In the case at bar such consent was given by the land owners on conditions, upon the fulfilment of which by them their right to close it became established under the terms of the privilege.

The averments of the answer, as well as the allegations

of the bill, and the evidence show that the conditions have been fulfilled.

We are of the opinion that the injunction was improperly granted in the first instance; that the motion to dissolve it should have been granted and that the order appealed from is erroneous.

The decretal order is therefore reversed.

TERRELL, STRUM AND BUFORD, J. J., concur.

WHITFIED, J., dissents.

BROWN, J., disqualified.