BINO and wife, Appellants, v. CITY OF HURLEY, Respondent.

*May 4—June 6, 1961.*

For the appellants there was a brief by *Clarence V. Olson* of Ashland, and *Norlin & Spears* of Washburn, and oral argument by *Mr. Olson*.

For the respondent there was a brief by *Schmitt, Wurster & Tinglum* of Merrill, and *James E. Flandrena,* city attorney of Hurley, and oral argument by *Sverre O. Tinglum.*

CURRIE, J.   The two issues presented on this appeal are:

(1) Was a public highway created under sec. 80.01 (2), Stats., with respect to the roadway by reason of work done on the same by the city for a period of ten years or more?

(2) Was a public highway created with respect to such roadway, including the spur, through adverse user?

*Public Highway Under Sec. 80.01 (2), Stats.*

Sec. 80.01 (2), Stats., provides in part, "All *highways not recorded* which have been worked as public highways ten years or more are public highways, . . ." (Italics supplied.)

The two acres of land conveyed by the former owner to the water-utility company in 1924 or 1925 was landlocked with no access to the public highway, assuming the existing roadway was a private road and not a public highway. Therefore, an easement to use such existing roadway as a means of access to, and egress from, such two-acre tract would be implied to have passed to the grantee utility company because such right of way was one of necessity. *Sicchio v. Alvey* (1960), 10 Wis. (2d) 528, 538, 103 N. W. (2d) 544, and *Bullis v. Schmidt* (1958), 5 Wis. (2d) 457,

461, 93 N. W. (2d) 476. The city, as successor in title to the utility company, succeeded to its easement rights. Inasmuch as such easement is appurtenant to land held by the city in its proprietary capacity, the easement is held in like capacity.

The use of a way of necessity is permissive and not adverse, and cannot constitute the foundation of a prescriptive easement. 1 Thompson, Real Property (perm. ed.), p. 712, sec. 432; *Waubun Beach Asso. v. Wilson* (1936), 274 Mich. 598, 265 N. W. 474, 103 A. L. R. 983. Furthermore, one entitled to use a private way has the right to make reasonable repairs and improvements thereto so long as he does not increase the burden on the servient estate. *Knuth v. Vogels* (1953), 265 Wis. 341, 345, 61 N. W. (2d) 301, and cases cited in Anno. 112 A. L. R. 1303. Indeed, if such roadway was not a public highway, the city as owner of the right of way would be obligated to maintain it, if anyone were so obligated. *Holt v. Wissinger* (1958), 145 Conn. 106, 139 Atl. (2d) 353.

Therefore, the city in its operations in improving and maintaining the roadway was merely doing that which any private owner of an easement of way would have a right to do. We cannot believe that the legislature in enacting sec. 80.01 (2), Stats., ever intended the absurd result that a municipality, in the position of the city here, could convert into a public highway its previous existing easement of way by carrying on works of improvement and maintenance over a ten-year period. There would be nothing in such activities of the city which would apprise the plaintiff owners that a private way was being changed into a public highway. *Minocqua v. Neuville* (1921), 174 Wis. 347, 353, 182 N. W. 471, and *State ex rel. Lightfoot v. McCabe* (1889), 74 Wis. 481, 484, 43 N. W. 322. The statutory words *"highways not recorded"* are ambiguous. In view of this we should adopt an interpretation that will avoid such

an absurd result as that contended here by the city. *State v. Surma* (1953), 263 Wis. 388, 395, 57 N. W. (2d) 370. Therefore, we determine that the existing roadway, over which the city's easement of necessity extended, was *not* a *"highway not recorded"* within the meaning of sec. 80.01 (2), Stats.

This will require a reversal of the judgment below unless the city is entitled to prevail on its motion for review grounded on the premise that the roadway and spur had been established as a public highway by user.

*Public Highway Created by User.*

The learned trial court determined that up until 1924 or 1925, when the easement by necessity was created with respect to the roadway, there had been no highway created by user. The memorandum opinion relied upon *State v. Town Board* (1927), 192 Wis. 186, 212 N. W. 249. In that case this court through Mr. Justice OWEN declared (p. 194):

"It must be admitted, though we do it with regret, that there are other cases decided by this court which seem to hold that the mere naked user of a road for twenty years is sufficient to establish such road as a public highway. *Chippewa Falls v. Hopkins,* 109 Wis. 611, 617, 85 N. W. 553, and cases there cited. We can but regard the doctrine of those cases as unsound. They ignore entirely the very fundamental proposition that *the user must be adverse or under such circumstances as will give rise to a presumption of an intention on the part of the owner to dedicate the road as a public highway.* Those cases were not followed in *Bassett v. Soelle,* 186 Wis. 53, 202 N. W. 164, where the doctrine was recognized that the use must be under such circumstances as to give rise to a presumption of an *animus dedicandi* on the part of the owner." (Emphasis supplied.)

We fully approve such quoted statement. There is no evidence in the instant record of any circumstances evidenc-

ing an intention on the part of the owners prior to 1924 to dedicate the land occupied by the roadway as a public highway. However, if there were twenty or more years of adverse user by the public, that would create a presumption of such intention to dedicate. *Couture v. Dade County* (1927), 93 Fla. 342, 112 So. 75; *Walcott Township v. Skauge* (1897), 6 N. D. 382, 71 N. W. 544. The crucial question is whether the user of the roadway by the public from 1890 to 1924 was adverse. This depends upon the character of the land during such period.

There is a presumption that the use of uninclosed, unimproved, and unoccupied land is permissive and not adverse. 1 Thompson, Real Property (perm. ed.), p. 712, sec. 432; 39 C. J. S., Highways, p. 931, sec. 11. In the leading Wisconsin case of *Bassett v. Soelle* (1925), 186 Wis. 53, 58, 202 N. W. 164, the court stated this rule with respect to such type of lands as follows:

"Of course an easement may be acquired over such land by long adverse user, when the use is accompanied by a notorious assertion of right showing a hostile claim. But in the absence of such conduct, mere acquiescence in the use is regarded as permissive, and no presumption arises that the use is under a claim of right."

This rule with respect to the user of uninclosed, unimproved, and unoccupied lands is an exception to the general rule applicable to all other lands, which is that mere unexplained user for twenty years creates a presumption that the use was adverse. For a statement of such general rule see *Carmody v. Mulrooney* (1894), 87 Wis. 552, 554, 58 N. W. 1109, and *Shellow v. Hagen* (1960), 9 Wis. (2d) 506, 510, 101 N. W. (2d) 694.

The city contends that the rule, that user of unimproved, uninclosed, and unoccupied land is presumed to be permissive and not adverse, has been disapproved by the more-recent Wisconsin cases. In support of such contention the

city cites *Shepard v. Gilbert* (1933), 212 Wis. 1, 249 N. W. 54; *Carlson v. Craig* (1953), 264 Wis. 632, 60 N. W. (2d) 395; and *Shellow v. Hagen, supra.* We are satisfied that the city has wrongly interpreted such three cases. This is because all three recognized the existence of such rule but held that the same was inapplicable to the particular fact situations which there confronted the court. In the *Shepard Case* the tract of land there involved had been subdivided into building lots and several homes had been erected thereon. The land in the *Carlson Case* since 1916 had been improved for agricultural purposes in that a portion had been cleared and fruit trees set out. In the *Shellow Case* the land over which the easement was claimed, while uninclosed lake shore, had been occupied and used by the owners.

The public policy underlying such attacked rule has been embraced by the legislature and the rule embodied in sec. 330.12 (2), Stats.[1] Furthermore, such rule is one which has been adopted and followed by the great majority of courts in other jurisdictions which have been faced with the issue. Anno. 170 A. L. R. 776, 820, 821. For recent expressions of approval of the rule by other courts see *Poulos v. Hill Co.* (1948), 401 Ill. 204, 214, 81 N. E. (2d) 854, 859, and *Hazek v. Greene* (1958), 51 N. J. Super. 545, 144 Atl. (2d) 199, 204, citing earlier decisions by the New Jersey supreme court.

Although located within the limits of the defendant city, the land traversed by the instant roadway during the period of 1890 to 1924 was uninclosed, unimproved, and unoccupied. It was cutover land grown up to brush and small trees like so much of the cutover land in northern Wiscon-

---

[1] Sec. 330.12 (2) reads: "The mere use of a way over uninclosed land shall be presumed to be permissive and not adverse." Such statute was held in *Christenson v. Wikan* (1948), 254 Wis. 141, 144, 35 N. W. (2d) 329, to apply only to such uninclosed land in a wild and unimproved state.

sin. Horses and cows owned by persons other than the landowners were permitted to pasture and roam over such land. There is much evidence of use of the roadway by the public in order to gain access to the lake for picnics, boating, bathing, and fishing. This court in *State v. Town Board, supra,* quoted an extract from Judge A. H. REID's opinion in the trial court wherein Judge REID stated (192 Wis. p. 192):

"The use which other people made of it [a former logging road] thereafter was just such use as is commonly made by all sorts of people here in Northern Wisconsin, who use any and every old logging road, tote road, or other way which they may find in wild lands, *and particularly in the vicinity of lakes.*" (Emphasis supplied.)

In *Lundberg v. University of Notre Dame* (1939), 231 Wis. 187, 282 N. W. 70, 285 N. W. 839, a trail ran across an uninclosed woodland and connected two small lakes. It had been used for thirty years by the guests at the plaintiff's resort and by many others. The plaintiff several times cleaned brush from the trail. He then claimed he had acquired an easement by prescription over the trail such that the owner of the woodland could not prevent the plaintiff or guests at his resort from using it. The court, explaining and somewhat expanding its previous decisions upon the subject, held that where there is an uninclosed woodland such that travel through it by the public will not interfere with the use which the owner is making of the land, then open, continuous, and notorious travel over it for a period of twenty years by another will not lead to the presumption —as it would if the land were of any other type—that the use has been adverse. The presumption will be that the owner has given a general permission for persons to use the land, and it will be presumed that the persons thus

using the land do so under the permission. Hence, there being no adverse use, no rights by prescription will arise.[2]

At some time during the period of 1890 to 1924 there were picnic tables erected on the shore of Lake Lavina and a boat livery was operated on the lake. The only access to such picnic tables and boat livery was over the roadway in question. The city contends that such picnic tables and boat livery constituted improvements which make inapplicable the rule of cases such as *Bassett v. Soelle, supra,* and *State v. Town Board, supra.* We disagree. Such picnic tables and boat livery were at the terminus of the roadway and did not change the character of the lands through which it passed. Furthermore, if the tables had been erected by the landowners or with their permission, and, if the boat livery had also been conducted with such owners' permission, a reasonable inference would be that the use by the public of the roadway to reach the tables and boats was also with the landowners' permission. The record is entirely silent as to the circumstances surrounding the erection of the tables and the establishment of the boat livery.

The trial court properly held that the evidence of user prior to 1924, because of the character of the land traversed by the roadway, did not raise a presumption that such use was adverse, but on the contrary the presumption is that it was permissive. Therefore, no public highway had been established by user up until the time of the conveyance of the two acres in 1924 or 1925 for the purpose of erecting the pumping station.

Subsequent to 1924 there was still some use made of the roadway by the general public. However, the erection and maintenance of the gates hereinbefore described, although

[2] The foregoing summary of the facts and holding of *Lundberg v. University of Notre Dame, supra,* has been taken from 1940 Wisconsin Law Review, 87.

sporadic, prevented any establishment of a highway by user during such period. This is because there never was twenty years of uninterrupted use by the public of the roadway after 1924 without gates being present. Maintenance of gates along a line of travel is not inconsistent with a private easement, but their presence is inconsistent with the existence of a public highway. *State v. Halvorson* (1925), 187 Wis. 611, 614, 205 N. W. 426, and *State ex rel. Van Coulter v. Fadden* (1932), 209 Wis. 1, 242 N. W. 899.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment as prayed for in the plaintiffs' complaint, except that the damages for the removal of the gate shall be limited to $25.