NEW and wife, Appellants, v. STOCK and wife, Respondents.*

*No. 155. Argued November 30, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 276.)

* Motion for rehearing denied, with costs, on March 2, 1971.

470

For the appellants there were briefs by *Smith & Miller* of Jefferson, and oral argument by *Richard C. Smith*.

For the respondents there was a brief and oral argument by *John B. Danforth* of Jefferson.

CONNOR T. HANSEN, J.  On August 17, 1901, a plat designated Porter's Park and consisting of 12 lots with shore frontage on Lake Ripley was recorded by J. W. Porter and J. H. Townsend.  On July 8, 1924, a plat designated as the First Addition to Porter's Park was recorded by John W. Porter.  This plat consisted of prop-

erty west of Porter's Park and specified a 15-foot right-of-way in Lot 2 of Porter's Park as an accessway to Lake Ripley, with the restriction that this right-of-way was limited to the use of lot owners of the First Addition to Porter's Park.[1]

In October, 1926, a series of transactions occurred whereby the original right-of-way was relocated 25 feet to the northwest in Lot 2 of Porter's Park.[2] On October 7, 1926, the owners of all the property in the First Addition to Porter's Park conveyed their interest in the original right-of-way by quitclaim deed to Paul Wenzel, who was then the owner of Lot 2 in Porter's Park. The quitclaim deed contained a statement that the deed was executed for the purpose of moving the original right-of-way 25 feet to the northwest, and that the new right-of-way was restricted to use by the owners of property in the First Addition to Porter's Park. On the same date, Wenzel conveyed to the town of Oakland, by warranty deed, a 15-foot wide strip of property between Ripley Avenue and Lake Ripley, 25 feet to the northwest of the original right-of-way. The deed to the town of Oakland contained a restriction that the right-of-way was restricted to use by the owners of property in the First Addition to Porter's Park. On October 26, 1926, the town board of the town of Oakland accepted the warranty deed by Paul Wenzel and ordered the original right-of-way discontinued. Both the quitclaim deed of the original strip to Wenzel and the acceptance by the town board of the warranty deed conveying the substituted strip were recorded on November 24, 1926.

The appellants, Glenn E. New and Patricia A. New, subsequently acquired two parcels of land lying outside

---

[1] For the purposes of this appeal, it can be said that this right-of-way traversed the approximate center of Lot 2, and is herein referred to as the original right-of-way.

[2] These conveyances located the right-of-way along the northern boundary of Lot 2, and is herein referred to as the substitute right-of-way.

of Porter's Park and the First Addition to Porter's Park, by two separate conveyances. Their chain of title for both parcels of land goes back to John W. Porter. On January 21, 1939, a deed was recorded by which Porter conveyed the first parcel to the appellants' predecessor in interest. The deed included a grant of a right-of-way over the original strip in Lot 2 of Porter's Park. On September 11, 1954, a deed was recorded by which this parcel and the same right-of-way were conveyed to the appellants. On October 20, 1932, a deed was recorded by which John W. Porter conveyed the second parcel of land to the appellants' predecessor in interest. This deed also included a grant of right-of-way over the original strip in Lot 2 of Porter's Park. On April 27, 1967, a land contract was recorded by which this parcel, together with the right-of-way, was conveyed to the appellants. Until November, 1946, when Wenzel sold his interest in Lot 2, record title to the real estate comprising the original right-of-way was in Wenzel by virtue of the 1926 quitclaim deed from the owners of all the property in the First Addition to Porter's Park. Therefore, the deeds from Porter to the appellants' predecessors-in-interest, granting a right-of-way, were not effective to convey any interest in the original strip, because Porter did not own it at the time of the conveyance.

On May 8, 1967, the respondents purchased Lots 1 and 2 of Block 2 of the First Addition to Porter's Park.

This action was commenced by the appellants to establish their right to use the substitute strip as a right-of-way to Lake Ripley free from interference by the respondents. The trial court held the substitute strip was a private right-of-way for the exclusive use by owners of lots in the First Addition to Porter's Park, and judgment was entered restraining the appellants from using the strip.

Two issues are raised on appeal:

(1) Did the appellants acquire a right-of-way by prescription to use the substitute strip?

(2) Was the substitute strip effectively reserved for use by owners of the First Addition to Porter's Park?

*Right-of-way by adverse use.*

Did the appellants acquire a right-of-way as to the substitute right-of-way by adverse use by the public for more than twenty years? We think not.

It is generally held that an individual property owner does not acquire a right-of-way by prescription where the claim is based on adverse use by the public for the prescriptive period. 25 Am. Jur. 2d, *Easements and Licenses*, p. 453, sec. 40; *Use by public as affecting acquisition by individual of right of way by prescription,* Annot. 111 A. L. R. 221. It is also generally held that the public cannot acquire rights by prescription; this is on the theory that since a grant cannot be made to the public there is no room for the presumption of a lost grant. 4 Tiffany, *Real Property* (3d ed.), p. 550, sec. 1193. An exception, however, is made in the case of a public highway created by adverse use for a period of years which gives rise to a presumption of dedication. 4 Tiffany, *Real Property* (3d ed.), p. 598, sec. 1211.

In *State v. Town Board* (1927), 192 Wis. 186, 194, 212 N. W. 249, this court overruled several earlier cases and held that a public highway could be created by adverse use by the public under circumstances giving rise to a presumption of intention on the part of the owner to dedicate a public highway.

"... It must be admitted, though we do it with regret, that there are other cases decided by this court which seem to hold that the mere naked user of a road for twenty years is sufficient to establish such road as a public highway. *Chippewa Falls v. Hopkins,* 109 Wis. 611, 617, 85 N. W. 553, and cases there cited. We can but regard the doctrine of those cases as unsound. They ignore entirely the very fundamental proposition that the user must be adverse or under such circumstances as

will give rise to a presumption of an intention on the part of the owner to dedicate the road as a public highway. Those cases were not followed in *Bassett v. Soelle,* 186 Wis. 53, 202 N. W. 164, where the doctrine was recognized that the use must be under such circumstances as to give rise to a presumption of an *animus dedicandi* on the part of the owner. . . ."

The presumption that use of unenclosed, unimproved and unoccupied land is permissive and not adverse is applied in the case of a public highway claimed to have been created by prescription.

". . . The necessity of an intention on the part of the owner to dedicate is clearly recognized in *Bassett v. Soelle,* and it is there said: 'Outside this jurisdiction the decisions almost universally hold that mere use of a track or way over uninclosed lands, and especially woodlands, for the statutory period does not raise a presumption that the use is adverse to the rights of the owner. Indeed, there seem to be very few states in which a contrary rule prevails.' The reasons for the distinction between the rule which should govern in the case of the use of a way over inclosed and uninclosed land were there pointed out, and it was said: 'It would be a harsh rule that the owners of such lands must stand guard over them or be deprived of valuable rights by those who have taken advantage of liberal treatment.' It might have been said, also, that there is no consideration of morals or of public policy which requires the penalizing of that neighborly consideration which permits or acquiesces in the use of a way over wild and uninclosed lands in a wild and undeveloped region. The law affords ample opportunity for the establishment of highways where needed. It is not necessary to penalize a considerate owner who has permitted travel over his uninclosed lands in order that the neighborhood may have highways. . . ." *State v. Town Board, supra,* page 195.

In this case, there was testimony that dating as far back as 1920, the entire area of Lot 2 in Porter's Park was occasionally used by various persons for access to Lake Ripley, for hunting, fishing, skating, and for playing football. However, at this time the substitute strip

was not clearly delineated from the remainder of Lot 2. Lots 1 and 2 of Porter's Park were owned by Paul Wenzel from 1926 to 1946. There was a house built on the south end of Lot 1; Wenzel lived in the upper portion of the house, operated a tavern and store in the lower portion, and operated a boat livery consisting of 17 boats on the premises. The Wenzel property was purchased by Raymond Johnson in 1946. At this time the substitute strip was completely open and was delineated only by a fence post where the strip met Ripley Avenue, by two walnut trees on the south side of the strip, and by an iron stake 25 feet from the edge of Lake Ripley on the north side. It had grown over with weeds and high grass and was largely inaccessible. Johnson built a home on the lot line between Lot 1 and Lot 2 in 1947. He sold groceries in the dwelling which had been used by Wenzel until 1951 or 1952; and he sold refreshments and soft drinks and operated a boat livery there until 1957 or 1958. The 15-foot wide substitute strip continued to be inaccessible and grown over with weeds until 1952. Sometime between 1955 and 1959, two signs were placed at the Ripley Avenue end of the substitute strip which read: "This right of way to lake reserved for exclusive use of residents in 1. St. Addition to Porter's Park. By order of Oakland town board."

In 1967 the strip was separated from the remainder of Lot 2 by a wooden fence on the south side of the strip.

The facts in this case are somewhat similar to those in *Bino v. Hurley* (1961), 14 Wis. 2d 101, 109–111, 109 N. W. 2d 544, where this court held that a public highway had not been created by adverse use.

"Although located within the limits of the defendant city, the land traversed by the instant roadway during the period of 1890 to 1924 was uninclosed, unimproved, and unoccupied. It was cutover land grown up to brush and small trees like so much of the cutover land in northern Wisconsin. Horses and cows owned by persons other than the landowners were permitted to pasture and

roam over such land. There is much evidence of use of the roadway by the public in order to gain access to the lake for picnics, boating, bathing and fishing. . . .

"`. . . .`

"At some time during the period of 1890 to 1924 there were picnic tables erected on the shore of Lake Lavina and a boat livery was operated on the lake. The only access to such picnic tables and boat livery was over the roadway in question. The city contends that such picnic tables and boat livery constituted improvements which make inapplicable the rule of cases such as *Bassett v. Soelle, supra,* and *State v. Town Board, supra.* We disagree. Such picnic tables and boat livery were at the terminus of the roadway and did not change the character of the lands through which it passed. . . .

"The trial court properly held that the evidence of user prior to 1924, because of the character of the land traversed by the roadway, did not raise a presumption that such use was adverse, but on the contrary the presumption is that it was permissive. Therefore, no public highway had been established by user . . . ."

In this case, until at least 1952 when the strip was cleared it was unenclosed and unimproved land under the doctrine of *Bassett v. Soelle, supra; State v. Town Board, supra;* and *Bino v. Hurley, supra.* The improvements on the property adjacent to the strip would not change the character of the land in question. This action was commenced in 1968. Since use by the public of the substitute strip was presumptively permissive prior to 1952, there had not been twenty years of continuous adverse use by the public.

There was testimony by the appellants that they adversely used the strip for access to Lake Ripley since 1954, when they first acquired property in the area. This use did not continue for twenty years.

Appellants also contend that their use of the right-of-way was made under color of title and therefore comes within the ten-year restriction as to adverse use prescribed by secs. 893.06 and 893.10, Stats. Appellants' claim of an easement by adverse use was over the sub-

stitute strip, while their deeds granted a right-of-way over the original strip. Sec. 893.06 requires "occupation and possession of the premises included in such instrument or judgment or of some part of such premises . . . ." In *Zuleger v. Zeh* (1915), 160 Wis. 600, 604, 605, 150 N. W. 406, it was held that lands not described in a deed could not be acquired by adverse use under the ten-year statute of limitations:

". . . The defendant has a conveyance under Reed which carries him as far east as the west boundary of the lots in question, and it may be that as to land west of the west boundary of the lots in question he has title by adverse possession of ten years. This it is not necessary to decide because it appears to us that the strip of land in controversy has been shown *prima facie* to lie east of the west boundary of the lots in question and therefore not included within the calls of the defendant's deed. In such case and as to land so lying, the ten years' statute of adverse possession has no application. Land lying outside and clearly beyond the calls of a deed but claimed by the grantee in the deed can only be wrested from the true owners by an adverse possession of twenty years under secs. 4213 and 4214, Stats. 1913. Sec. 4211, Stats. 1913, lays down the rule for a case where an adverse occupant is holding land part under a written conveyance or judgment and an adjoining part not covered by such written conveyance or judgment. . . ."

*Restriction of use of the substitute strip.*

The appellants also argue that the conveyance of the substitute strip by Wenzel to the town of Oakland was fatally defective because it was a conveyance to a municipal body for the benefit of a limited class of persons, and that since the warranty deed was ineffective to convey the land to the town of Oakland, the title remained in the grantor, Paul Wenzel. Neither the town of Oakland nor Wenzel are parties to this proceeding and

the record is silent as to whether Wenzel is still living; or, if not, whether he had any heirs.

There are at least two reasons why appellants cannot raise the invalidity of the restricted use of the substitute strip as an issue on this appeal.

First, appellants' objection to the conveyance to the town of Oakland is that the municipality has no power to hold property for other than a municipal purpose. The validity of conveyances to municipalities cannot be challenged in litigation between individuals as private parties. This court has held that a conveyance of this nature can be challenged only by the public.

"Whether the conveyance was contrary to 'public purpose' and hence void cannot be raised by the plaintiff. The general rule as stated in Corpus Juris Secondum is:

" '. . . where a municipal corporation having power to acquire property for some purposes, but not for others, takes it for unauthorized purposes the transfer is not void but vests title in the corporation which may be questioned only by the state, a taxpayer, or some person authorized to represent the inhabitants of the municipality.' 63 C. J. S., Municipal Corporations, p. 521, sec. 971.

"In the case of *Roelvink v. Milwaukee* (1956), 273 Wis. 605, 79 N. W. (2d) 106, plaintiffs based a cause of action upon a claim that at the time of the conveyance there was no legal public purpose for the acquisition of the property, and that therefore the acquisition was void. We therein held that the plaintiffs, who were seeking a reconveyance, were in no position to challenge the holding of the property by the city, as the challenge should have been made only by the public or someone acting for it. To reach that conclusion, we relied on the rule as stated in McQuillin.

" ' "The power of a municipality to purchase or otherwise acquire real property can be questioned only by the state. The capacity of a municipal corporation to take a conveyance of land cannot, after the transfer has reached completion, be called in question in a collateral way, but this may be contested only by the state. In other words, the state alone can object to a municipality's want of

capacity under its charter to hold lands acquired by purchase or by devise. 'Where a general authority exists in a municipal corporation to buy real estate for any purpose, the vendor in such case, may not afterwards avoid his contract by insisting his deed is void because the corporation may have exceeded its powers in making the purchase. Only the state may inquire whether the corporation has transcended its powers.' So, the amount of real estate which a municipal corporation may hold is a question only for the state." ' *Roelvink v. Milwaukee, supra,* page 610." *Polanski v. Eagle Point* (1966), 30 Wis. 2d 507, 516, 517, 141 N. W. 2d 281.

Second, according to the appellants, since the attempted conveyance of the strip failed, the property remained in Wenzel. But appellants claim a right to use the substitute right-of-way by virtue of a prescriptive easement. Their claim that title to the substitute right-of-way strip remained in Wenzel does not bear on their alleged interest in the strip.

Sec. 274.10, Stats., provides that a judgment may be reviewed by this court "upon an appeal by any party aggrieved." In *Greenfield v. Joint County School Comm.* (1955), 271 Wis. 442, 447, 73 N. W. 2d 580, this court stated:

"The right of appeal is statutory and does not exist except where expressly given, and cannot be extended to cases not within the statute. A person is aggrieved by a judgment whenever it operates on his rights of property or bears directly on his interest. . . ."

*In re Fidelity Assurance Asso.* (1945), 247 Wis. 619, 624, 625, 20 N. W. 2d 638, this court stated:

". . . the determination as to whether it can appeal . . . depends upon whether the commission is a 'party aggrieved' within the meaning of that term as used in sec. 274.10, Stats.

"As is stated in 2 Am. Jur., Appeal and Error, p. 945, sec. 152, —

" 'A party is aggrieved if he would have had the thing if the erroneous judgment had not been given. Or, as it is sometimes put, in a legal sense a party is

aggrieved by a judgment or decree whenever it operates on his rights of property or bears directly upon his interest. A broader and more comprehensive definition is that an aggrieved party, within the meaning of a statute governing appeals, is one having an interest recognized by law in the subject matter which is injuriously affected by the judgment.' "

The judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.