SCHMIDT, Respondent, vs. HILTY-FORSTER LUMBER COMPANY, Appellant.

*November 5, 1941—February 10, 1942.*

The cause was submitted for the appellant on the briefs of *Roehr & Steinmetz* of Milwaukee, and for the respondent on those of *Carroll & Thekan* of Milwaukee.

The following opinion was filed December 2, 1941:

FRITZ, J.   The Hilty-Forster Lumber Company (herein-after called "Hilty Company") appeals from a judgment which provided that the plaintiff, Edward Schmidt, has an implied easement by way of necessity over land owned by Hilty Company for ingress and egress to and from his land to Wisconsin avenue.   The parcels of land now owned, re-spectively, by Schmidt and Hilty Company were part of a rectangular tract of 5.67 acres which was deeded to Jennie McAlpin in 1874.   The tract then had a frontage of two hundred ninety-five feet on a highway, which is now Wis-

consin avenue, and extended northward eight hundred thirty-six feet. In July, 1890, the Milwaukee & Wauwatosa Motor Railway Company acquired an easement by condemnation proceedings for a railway right of way on a fifty-feet-wide strip extending east and west across the McAlpin tract about two hundred four feet south of its north boundary. The damages awarded to Mrs. McAlpin included the value of the easement over the condemned strip and the depreciation in value of her remaining land and improvements by reason of the easement, but did not include the value of the fee title, which she retained in the strip, nor the value of her right to cross that strip without interrupting the Railway Company's operations along its tracks, which were laid in a depression cut nine feet below the natural surface of the land.

On April 30, 1907, Jennie McAlpin conveyed by a mortgage to Citizens Trust Company the parcel north of the railway right of way with the provision, "Excepting a strip of land fifty-five feet wide running north and south through the center of said premises." By foreclosure proceedings under that mortgage and mesne conveyances, including a quitclaim deed to Edward Schmidt, on October 23, 1916, the title to the north parcel became vested in him subject to the exception as to the fifty-five-feet strip, which was repeated in all of those conveyances by the same language that was used in the mortgage. Plaintiff has continued to own that parcel. It has not been used for any residence or business purpose and there has been no structure or other improvement thereon.

On July 2, 1910, Jennie McAlpin conveyed by a mortgage to Farwell Investment Company all of the tract south of the railway right of way and extending to Wisconsin avenue, excepting two parcels which are, respectively, in the southeast and southwest corners of her tract and have a frontage of one hundred twenty feet on Wisconsin avenue and a depth

of one hundred sixty feet. In the mortgage there is the provision:

"Also, excepting the right to dedicate and lay out as a public highway a strip of land fifty-five feet in width from east to west, through the center of said premises in a northerly and southerly direction."

By foreclosure proceedings and mesne conveyances, the title to the tract conveyed by the mortgage became vested in Hilty Company by a warranty deed dated December 31, 1919. In this deed and some but not all of the mesne conveyances, there was the above-quoted provision, "excepting the right to dedicate and lay out as a public highway," etc., which was in the later mortgage.

The court found, in addition to the above undisputed facts, that for many years prior to the condemnation proceedings in July, 1890, there was a visible well-defined roadway extending on Mrs. McAlpin's property from near its north boundary to Wisconsin avenue, which was continuously used by her and by others entering and leaving her premises; that it was her intention, in executing the mortgages mentioned above that the roadway be preserved as a right of way for the benefit of future owners of the tract north of the railway right of way; that after the easement was acquired by the Railway Company, and until Mrs. McAlpin finally disposed of her title, she and others, who called at her residence south of the railway's right of way, used the fifty-five-feet-wide north-and-south strip of land as a driveway from her residence to Wisconsin avenue; and that such use as a driveway and way of ingress and egress to and from the parcel lying north of the railway right of way was continued by all subsequent owners of the McAlpin tract, subject to the limitation and interruptions and temporary nonuse in that the Railway Company erected wire fences along the north and south sides

of its right of way across the McAlpin tract and also fences or barricades and danger signs at the east boundary line thereof, all of which structures were so placed for the sole purpose of protecting the public from danger and not for the purpose of claiming title to the fee of the right of way strip, or of excluding owners of the parcel lying north thereof from crossing in a northerly or southerly direction the railway right of way when such crossing could be made without interfering with railway operations. In this connection the court stated,—although it is obviously its conclusion as to a matter of law,—that such owners continued to possess the right to cross the railway right of way whenever proper provision should be made and proper facilities provided at their own cost to so cross without interfering with the railway operations to the fifty-five-feet wide strip for use as a roadway south of the railway right of way. The court also found that for several years after acquiring title in 1916, plaintiff visited his property intermittently by, at times, driving from Wisconsin avenue to the right of way, and then climbing over the south wire fence erected by the Railway Company, crossing the track and climbing over the north fence onto his own parcel; at times, by walking west from Thirty-Seventh street along the streetcar line, until that approach was interfered with by the barricade erected by the Railway Company at the east boundary line of the McAlpin tract; and at other times by proceeding west from Cedar street, which was north of his property, and going from there over the private lands of others; and that plaintiff's premises are entirely landlocked and there was not at the time of the first conveyance by Jennie McAlpin of any part of her tract, or thereafter, any way of enabling the plaintiff to enter his premises from, or to leave them to go to a public highway, except over land privately owned outside of the McAlpin tract, and to enter upon or depart from his premises it is necessary to use a reasonable part of the width of the fifty-five-feet-wide strip

extending northward from Wisconsin avenue to the railway right of way and across the latter.

The trial court concluded that the effect of the condemnation proceedings was not to destroy the right of Mrs. McAlpin and subsequent grantees of the tract north of the railway right of way to cross the tracks constructed thereon, in order to go to or from Wisconsin avenue, when such crossing can be made with safety and without interrupting railway operations; that plaintiff has an implied easement of a way by necessity for ingress and egress to and from Wisconsin avenue on so much of the fifty-five-feet-wide strip of land as is reasonably and necessarily required for such purpose, to wit, a strip twenty feet wide, running through the center of the fifty-five-feet-wide strip from Wisconsin avenue on the south to and across the railway right of way to the property of the plaintiff on the north; that no abandonment of his easement was effected by the partial use or nonuse of such way by plaintiff for considerable periods of time or by the facts that structures at times have interrupted his use of such right of way or that he at times used other ways over private property to reach his premises, or by any other conduct on his part or that of any of the parties; that the facts disclosed by the evidence do not establish an estoppel *in pais* precluding plaintiff from establishing his claim to such easement, and he is not bound or his rights concluded in any way by a judgment obtained by Hilty Company in a circuit court action brought to quiet its title; and that he is entitled to judgment determining that he has a right to use such portion of the fifty-five-feet-wide strip as is reasonably necessary to enable him to have ingress and egress to and from his land to Wisconsin avenue. In a written decision the court concluded that—

". . . in the instant case the conveyances contain no express grant or reservation of a right of way. Nor can such easement be implied from the language alone. The language 'excepting the right to dedicate' etc. appearing in some of the

conveyances of parts of the McAlpin tract south of the tracks is merely in the nature of an offer to dedicate the 55 ft. strip. There was no acceptance of dedication, without which there can be no street. . . . The mere language referred to, as well as the language 'excepting' the 55 ft. strip which appears in the conveyances of that part of the McAlpin tract which is north of the tracks, cannot be extended by construction into an implied grant or reservation of an easement of a right of way over one of said parcels for the benefit of the other."

But, on the other hand, the court concluded that the plaintiff had a right of way by necessity under the rule applied in *Miller v. Hoeschler,* 126 Wis. 263, 269, 105 N. W. 790; *Frank C. Schilling Co. v. Detry,* 203 Wis. 109, 117, 233 N. W. 635; *Backhausen v. Mayer,* 204 Wis. 286, 234 N. W. 904, 74 A. L. R. 1245. In connection with concluding also that there was no abandonment of the easement by plaintiff by reason of nonuse, the court said,—

"Since the plaintiff had made no improvements on his parcel of land and had no residence or business there he was not required to continuously use a way of ingress and egress. Because of obstructions placed on the 55 ft. strip and fences on the railway right of way he at times entered and left his land by other ways. But these other ways necessarily had to be over the private property of adjacent owners. He had no other way unless he trespassed on the property of others or made such partial use as was possible of the 55 ft. strip in question in spite of the obstructions. Under the circumstances the mere nonuse of the 55 ft. strip continuously, and the use of other ways, at times, does not operate to terminate plaintiff's easement, or to effect an abandonment thereof."

On this appeal Hilty Company contends that even if there existed, at the time Mrs. McAlpin mortgaged the tract north of the railway right of way, an implied easement of a way by necessity from that tract to Wisconsin avenue over the south tract to which she then retained title, such easement or way by necessity has since been lost, in so far as Hilty Company, as a *bona fide* purchaser of the south tract is concerned, be-

cause there was no express or implied grant or reservation thereof under the language in any recorded conveyance, and Hilty Company had no knowledge or notice of any such easement or way of necessity to and from the land acquired by Schmidt. In support of this contention Hilty Company relies upon the following facts which are established by evidence that was not disputed. When Hilty Company acquired title in December, 1919, as a *bona fide* purchaser by warranty deed of the tract south of the railway right of way, that tract was separated from plaintiff's property by the fifty-feet-wide strip used ever since 1890 as such right of way, with tracks laid in a depression cut nine feet deep below the natural surface of the adjacent land, and with wire fences along the north and south lines thereof, and because of these conditions it was physically impossible for anyone to drive to or from plaintiff's land across the railway right of way and on to the south tract in order to drive over that tract to or from Wisconsin avenue. At the time and ever since Hilty Company acquired the south tract, the only driveway thereon was twelve feet wide and lead from Wisconsin avenue to a few feet north of the McAlpin residence,—which was about fifty feet south of the railway right of way fence,—but did not extend to the fence. Schmidt testified that because of the railway right of way he had never driven from Wisconsin avenue to his property and had not been using the fifty-five-feet-wide strip of Hilty Company's property from Wisconsin avenue to the railway right of way. His tract was not being used for any residence, business, or other purpose, and there has been no structure or other improvement thereon. He did nothing to protect or safeguard the right of way across the south tract which he claims herein, or to make such a claim known in any manner so that there would be something to put a purchaser of the latter tract on notice that Schmidt or anyone claimed an easement or way by necessity to and from his tract to Wisconsin avenue over the land purchased by

Hilty Company in 1919. Its president testified that the first time he heard of plaintiff or anyone else claiming a right of way over its property was when the summons in the action was served on December 29, 1939.

In view of those facts and the absence of any knowledge or notice on the part of Hilty Company as to the existence of such an easement or way by necessity, the following conclusions stated in relation to analogous circumstances in *Backhausen v. Mayer, supra,* p. 289, are in point, to wit:

"The question is whether under our recording statutes Albert Hanke took title to the servient estate burdened with the easement of this right of way. Under our recording statutes it is necessarily held that a *bona fide* purchaser of land without knowledge or actual or constructive notice of the existence of an easement takes title to the same relieved of the burden or charge of the easement. 9 Ruling Case Law, p. 805; 19 Corp. Jur. p. 940; *Taggart v. Warner,* 83 Wis. 1, 53 N. W. 33. . . . In this case the easement was not created by express covenant in the grant of the north twenty-five acres, and an examination of the record of that deed by Hanke when he purchased the servient estate would not have advised him of the existence of this way. . . . An examination of the record would have revealed to him that his grantor at one time owned the north twenty-five acres and that he had conveyed it, but the record would not have advised him that it was conveyed to one who had no access to a highway. The most that might be said is that when the record revealed a former co-ownership by Hanke's grantor of the dominant and servient estate he was put upon inquiry to ascertain whether the severance of the ownership of the two estates was of such a nature as to give the owner of the dominant estate a way of necessity over the servient estate which he was then purchasing. Such a doctrine would be unreasonable. . . . Such a doctrine would be the exercise of an unreasonable solicitude for a negligent grantee who fails to exact an express covenant granting to him the right of way necessary for the beneficial enjoyment of his premises. . . . While the court found that the way had been used in recent years, there is no contention that it had been used adversely so as to give rise

to a way by prescription as against the plaintiffs, nor is there any evidence that the plaintiffs or their father had any knowledge of the existence of the way. The conclusion seems to be inevitable that the way of necessity with which the servient estate was undoubtedly burdened during the time it was owned by Christian Mayer was extinguished when Christian Mayer conveyed to Hanke in 1895."

Because the rule and the reasons and conclusions thus stated are likewise applicable herein, the court's adjudication that such a way of necessity over Hilty Company's land exists at the present time for the benefit of plaintiff's land was erroneous; and therefore the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.

A motion for a rehearing was denied, with $25 costs, on February 10, 1942.