Frederick J. LUDKE, as Successor Personal Representative of the Estate of Catherine Ludke, Plaintiff-Respondent, v. EGAN, and wife, Defendants and Third-Party Plaintiffs-Appellants: BANK OF KAUKAUNA, Defendant and Third-Party Plaintiff: MICKE, and wife, Third-Party Defendants-Respondents: OSCAR J. BOLDT CONSTRUCTION COMPANY, Third-Party Defendant.

Supreme Court

*No. 76–037. Submitted on briefs January 9, 1979.—*
*Decided January 30, 1979..*
(Also reported in 274 N.W.2d 641.)

222

For the appellants the cause was submitted on the brief of *Esler & Esler* of Kaukauna.

For respondent Frederick J. Ludke the cause was submitted on the brief of *Bradford & Gabert,* attorneys, and *Edgar Becker,* of counsel, all of Appleton.

For Urban and Catherine Micke the cause was submitted on the brief of *McCarty, Curry, Wydeven, Peeters & Riester* of Kaukauna.

CONNOR T. HANSEN, J. On March 20, 1974, the personal representative of the estate of Catherine Ludke brought an action against the appellants for a declaratory judgment seeking either an easement by necessity or by prescription over the appellants' land for the benefit of a landlocked parcel owned by the estate. The appellants brought a third-party action against the Mickes, third-party defendants and respondents, as grantors, for damages resulting if an easement were imposed.

A trial to the court was held May 7, 1975. The following facts were testified to at trial.

On November 30, 1920, William Micke sold a portion of his farm to Albert M. and Catherine Ludke. This parcel, referred to as the "brickyard," is on a point of land on the Fox River near Kaukauna. It was, at that time, com-

pletely surrounded by the Micke farm, but no right-of-way was granted in the deed.

In order for the Ludkes to gain access to the property he had sold them, William Micke permitted the Ludkes to use a roadway from the public highway across his farm and along the Fox River for a distance of 2,000 feet. It is the use of this roadway by Ludkes to gain access to their landlocked parcel of real estate that is the source of this litigation.

The road was described as being 18 to 20 feet wide and Ludkes began using it in 1920. They maintained the road by filling ruts and potholes with cinders and gravel when needed and also placed some drainage pipes and added "drive-out" areas so cars could pass. There had always been a gate at the public highway end of the road which was kept closed to keep Micke's cattle in, but not locked prior to 1948.

William Micke deeded the remainder of his farm to his son, Urban, in 1944. On November 22, 1948, Urban sold a parcel of river front property to Charles, James and Wm. Egan. The entire 2,000 foot roadway used by the Ludkes to gain access to their property traversed the parcel of real estate sold to Egans. Ludkes had used the roadway to reach their property continuously since 1920, and without objection from Mickes. There was testimony from several members of the Ludke family, as well as from Urban Micke and another long-time area resident, that the road was the only way to reach the Ludke property.

Albert M. Ludke and his wife, Catherine, lived at the brickyard only during the summer, but family members testified that the property was used year-round for recreation and by occasional tenants. Edward and Ruth Egan Dudke lived at the brickyard for two years when they were first married. Ruth Ludke testified that even after they moved into Kaukauna her husband visited the property daily.

Several witnesses testified that finding another route to the property was impractical because of the rugged terrain surrounding the brickyard property.

Urban Micke testified that George Egan, the appellant's father, first approached him about buying the property. In December, 1947, the Egans deposited $25 on the agreed price of $1,900, and in February, 1948, Micke gave the Egans an option to purchase. That summer the Egans began to clear brush along the road. An altercation ensued when George Egan discovered Edward Ludke using the road. Following this incident Urban Micke approached the Egans about allowing the Ludkes to use the road. The parties could not reach an agreement and subsequently retained counsel. An agreement was finally executed on August 3, 1948, in which the Egans agreed to allow the Ludkes to use the road for the life of Catherine Ludke, the grandmother of the Egan brothers. There is nothing in the record to indicate the Ludkes had knowledge of this agreement. Urban testified he didn't think this agreement with the Egans would affect the right of Ludkes or the rights of their successors to use the roadway, but signed it because that was what the Egans wanted. This agreement and deed from Urban Micke to the Egans are both dated August 3, 1948, and the deed made no reference to the roadway. Urban also testified that the Ludkes had his father's permission to use the roadway.

Under the terms of the agreement between Urban Micke and the Egans, the gate at the highway end of the property was kept locked but the Egans provided the Ludkes with keys for the gate. In fact, the lock on the gate was changed over the years and the Ludkes had keys for it.

When Catherine Ludke died in 1973, the Egans gave notice that permission to use the road was terminated. During these 25 years, between 1948 and 1973, the Egans had built a tavern and placed a quonset hut for storage at the highway end of their property. They had im-

proved the road by filling, grading and surfacing it. They presented bills and receipts for the improvements totalling over $6,000. The Egans testified that they had understood that upon Catherine Ludke's death, Micke would provide the Ludkes with a right-of-way over his property. This alleged agreement was not in writing and Micke denied making such a statement. Urban testified that there was no feasible alternate route and that he understood that the Ludkes' right to use the road could not be extinguished after such long use.

Although the Egans denied being aware of the easement, they each admitted they had known of the existence of the road and of the Ludkes' use, and admitted further that they had used it themselves as children when spending summers at the Ludke property. They said they knew that hunters and owners of boatyards along the shoreline also used the road. Micke testified he told the Egans of the Ludkes' right to use the road and that the Egans had refused to accept a deed or agreement which expressly referred to a right-of-way easement.

The Egans attempted to show that an alternative route lay across Mickes' land. They testified the road didn't end at the brickyard but continued north from it through a gravel pit area and connected with the Micke lane which led out to Highway 96. They said this lane was in the same condition as their road, with cinders and gravel in spots, and had been used for farm vehicles and gravel trucks, but could not recall seeing autos use it. James Egan testified he thought the lane was cut off by the gravel pit.

Micke testified he thought they must be referring to his cow lane which he used for tractors and livestock. This lane extended from his cowyard to the gravel pit and then into the woods on the Ludke property. Gravel trucks were able to use it when dry but that they also came in across the field. He didn't think a modern car could handle the lane. The lane ran only partway, was

not direct and would be an impractical route because it was three times as long as the Egan road, the land to the north of the Ludke property was considerably higher and two ravines lay between Micke's farmyard and the Ludke property.

The trial court found that the road provided the only feasible access to the Ludke property and that the Ludkes' use had been open, notorious, adverse and continuous. However, in its findings the court said such use was against the Egans and had existed since 1948. In its decision, the adverse use by the Ludkes was held to have existed from 1920 to 1948. The court held that the plaintiffs had established a right-of-way by prescription. The court further held that the Egans' claim against the Ludkes for expenses incurred in improving the road was barred by the six-year statute of limitations for contracts, and this issue is not before us on appeal. The court found that the Egans had actual and constructive notice of the easement prior to purchasing the property and therefore did not have a claim for damages against the Mickes.

Judgment was entered declaring that an easement by prescription existed and dismissing the third-party complaint of Egans against Micke for damages in the event the trial court imposed an easement across their property.

The issues on appeal are:

1. Did the trial court err in dismissing the third-party complaint of appellants-Egans, for damages against the third-party defendants-respondents, Mickes?

2. Did the trial court err in granting Ludkes an easement by prescription rather than a way of necessity?

The Egans predicated their claim against the Mickes on a breach of the covenant against encumbrances in the warranty deed. It is undisputed that the warranty deed did not mention the easement.

Easements are generally considered to be encumbrances within the covenant against encumbrances. *Tax-*

*man v. McMahan,* 21 Wis.2d 215, 219, 124 N.W.2d 68 (1963). However, this court has recognized an exception to that rule where the easement is known to the purchaser before he enters into a contract of purchase, or the easement is so open, obvious and notorious that he must have known of it. *Id.* at 220; *Rice v. Reich,* 51 Wis. 2d 205, 207, 186 N.W.2d 269 (1971). This exception has been the law in Wisconsin since 1868. *Kutz v. McCune,* 22 Wis. 598 (*628) (1868). Where applicable it extinguishes an action for breach of covenant. *Rice, supra,* at 207. The purchaser's knowledge is a question of fact for the trial court. *Id.* at 208.

The trial court found that each of the Egans had been aware of the road and the Ludkes' use of it since his childhood. Further, the Ludkes' claim was again brought to their attention during the summer of 1948, to such a degree that on the same date the deed to the Egan property was executed by the Mickes, the agreement was executed by the Mickes and the Egans regarding the use of the roadway by Ludkes. The trial court was correct in concluding that the Egans were not in a position to claim a breach of covenant because of this encumbrance and their third-party complaint against Urban and Catherine Micke was properly dismissed.

The trial court awarded an easement by prescription but the appellant contends only a way of necessity should have been granted. The principal difference between the two is that a prescriptive easement is permanent, whereas a way of necessity will continue as long as the necessity exists and until another lawful way has been acquired. *Niedfeldt v. Evans,* 272 Wis. 362, 364, 75 N.W.2d 307 (1956).

In *Bino v. Hurley,* 14 Wis.2d 101, 106, 109 N.W.2d 544 (1961), we held that since the parcel of land there

involved was landlocked, an easement of access and egress would be implied to have passed to the grantee because such right-of-way was one of necessity and stated:

". . . The use of a way of necessity is permissive and not adverse, and cannot constitute the foundation of a prescriptive easement. . . ."

The general rule is set forth in 25 Am. Jur.2d, *Easements*, sec. 47, as follows:

"A way of necessity is to be distinguished from a right of way acquired by prescription, since they arise by virtue of different conditions. As a general rule, no matter how long an easement is used as a way of necessity, such use cannot be adverse or confer a prescriptive right. The possession and use are always referable to the right arising from necessity and cannot be made the foundation or ground for the assertion of a higher right."

The rule was subsequently repeated in *Humble Oil & R. Co. v. Schneider Fuel & S. Co.*, 42 Wis.2d 552, 558, 167 N.W.2d 223 (1969), where this court upheld a complaint pleading the two types of easement in the alternative. The court stated that an implied easement of necessity was permissive, but could be avoided by a defense, in which event an easement by prescription might be available for the landlocked parcel. Although the case does not mention possible defenses, the court has, in other cases, recognized that a bona fide purchaser without notice has a defense to an easement by necessity. *Schmidt v. Hilty-Forster Lumber Co.*, 239 Wis. 514, 1 N.W.2d 154 (1942); *Taggart v. Warner*, 83 Wis. 1, 53 N.W. 33 (1892). *Humble Oil, supra*, suggests, by implication, that a way of necessity should be considered and rejected before an easement by prescription is granted.

A way of necessity typically arises where an owner serves a landlocked portion of his property by conveying

such parcel to another. *Backhausen v. Mayer,* 204 Wis. 286, 234 N.W. 904 (1931). The way is implied over the land retained by the grantor. A way of necessity will only be implied where one cannot reach the highway over his own land. *Id.* Under the facts of the instant controversy a way of necessity existed. William Micke sold a two-acre parcel of land located on a point on the Fox River to the Ludkes; the parcel was landlocked and the only access to it was across the Micke farm. A way of necessity was implied and the Ludkes used such right-of-way for the next twenty-eight years. This roadway was the 2,000 foot roadway along the Fox River and across the Micke farm land. The use was permissive and not adverse and cannot constitute the foundation for a prescriptive easement.

The trial court did not address the existence of a way of necessity, but instead found a prescriptive easement. The findings of the trial court and its decision must be sustained unless they are against the great weight and clear preponderance of the evidence. To reverse this court must determine that the evidence in support of a contrary finding constitutes the great weight and clear preponderance of the evidence. *Leimert v. McCann,* 79 Wis.2d 289, 296, 255 N.W.2d 526 (1977).

An easement by prescription requires the following elements, (1) adverse use hostile and inconsistent with the exercise of the titleholder's rights; (2) which is visible, open and notorious; (3) under an open claim of right; (4) and is continuous and uninterrupted for twenty years. *Mayer v. Grueber,* 29 Wis.2d 168, 177, 138 N.W.2d 197 (1965). An act is hostile when it is inconsistent with the right of the owner and *not done in subordination to it. Leimert, supra,* at 297. A use which is permissive is subservient and not adverse. *Mayer, supra,* at 178. A use of an easement for twenty years, unex-

plained, is presumed to be adverse and under a claim of right, unless contradicted or explained. *Shellow v. Hagen,* 9 Wis.2d 506, 510, 101 N.W.2d 694 (1960). However, the presumption may be rebutted by proof that the use was under license, indulgence or special contract inconsistent with a claim of right. *Id.* The evidence necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession and such evidence must be strictly construed against the plaintiffs. *Id.* at 511.

Clearly respondents' use of the road was shown by the evidence to be visible, open, notorious and continuous for twenty years. The issue is whether the use was adverse. There is no evidence that the Ludkes ever asked William Micke for permission to use the road. Urban Micke testified that he thought he had no right to stop the Ludkes' use. However, he also said that the Ludkes had his and his father's permission to the use the road. The agreement Urban entered into with the Egans says that the Ludkes used the road with the Mickes' permission. For the twenty-eight years prior to sale of the parcel to Egans by Micke, in order for Ludkes to gain access to the roadway it was necessary to use a gate at the highway entrance which was maintained for Mickes' use of their farm. We cannot conclude that the evidence presented by the respondents establishes any right or ownership to the roadway by adverse possession or use.

The trial court found that the road was the only feasible access to the Ludke property. This finding is well supported by considerable credible evidence. The Ludke property was originally part of the Micke farm and when it was sold as a landlocked parcel of real estate, a way of necessity thereby came into being. Such a right-of-way was permissive, *Bino, supra,* and absent any evi-

dence showing a denial of such permission at the commencement of the use it cannot be considered a foundation upon which to establish such adverse use as is required to create an easement by prescription. To hold otherwise would result in a way of necessity becoming a prescriptive easement after twenty years of continued use. To establish a prescriptive easement the evidence must be positive and every reasonable presumption must be made in favor of the owner of the estate. *Tarman v. Birchbauer*, 257 Wis. 1, 5, 42 N.W.2d 158 (1950). We believe such a finding in this case is against the great weight and clear preponderance of the evidence.

We, therefore, conclude that the rights of the respondents of access to and egress from their landlocked parcel of real estate constitute a grant of a way of necessity and not the establishment of a prescriptive easement. The judgment is modified to so provide, and as modified is affirmed.

The judgment dismissing the third-party complaint is affirmed.

On this appeal costs are awarded to Urban Micke and Catherine Micke, his wife, thirty-party defendants-respondents against Charles B. Egan and Lorreen Egan, his wife, defendants and third-party plaintiffs-appellants. No costs are to be taxed on appeal by either party in the action commenced by the Estate of Catherine Ludke, plaintiff-respondent.

*By the Court.*—Judgment modified and as modified, affirmed.