James G. SCHWAB and Katherine Schwab, Plaintiffs-Co-Appellants-Petitioners,

Dorice MCCORMICK, Plaintiff-Appellant-Petitioner,

v.

Helen TIMMONS, Carl D. Lenz Trust, Robert B. Bruce, Henry & Phyllis Pelletier, Robert W. Beart, Helen E. Beart, Robert W. Beart, Jr., Beth A. Drost, Stanford & Susan Sholem, Oscar C. & Patricia F. Boldt, John Zimdars, Jr., John C. Zimdars Jr. Trust, Nan M. Zimdars Trust, Warren T. Davis, Jr., R. Garret & Marjorie M. Phillips, Anne M. West, Robert C. Davis, James M. Rock, Barbara S. Monroe, James S. & Ann W. Reeve and Anne S. Hobler, Defendants-Respondents.

Supreme Court

*No. 97–1997. Oral argument November 12, 1998.—Decided February 12, 1999.*

(Also reported in 589 N.W.2d 1.)

27

For the plaintiffs-co-appellants-petitioners and plaintiff-appellant-petitioner there were briefs by *Thomas P. Lyons, Jennifer L. Sielaff* and *Cunningham & Lyons, S.C.*, Milwaukee and *Charles D. Koehler* and *Herrling, Clark, Hartzheim & Siddall, Ltd.*, Appleton and oral argument by *Thomas P. Lyons & Richard T. Elrod* of *Herrling, Clark, Hartzheim & Siddal.*

For the defendant-respondent, Carl D. Lenz Trust, there was a brief by *John F. Scanlan* and *Reetz & Scanlan, S.C.*, Fish Creek and oral argument by *Brett Eric Reetz.*

For the defendants-respondents, Beart, Drost, Sholem, Boldt, Zimdars Trust, Phillips & Davis, there was a brief by *Robert A. Ross* and *Ross Law Office*, Sturgeon Bay and oral argument by *Robert A. Ross.*

¶ 1. JON P. WILCOX, J. The petitioners, James and Katherine Schwab and Dorice McCormick (petitioners), seek review of a decision affirming the

circuit court's dismissal of their declaratory judgment action requesting an easement by necessity or by implication for both ingress and egress and utilities over the properties owned by the respondents in order to gain access to their landlocked parcels located in Door County. The circuit court, as affirmed by the court of appeals, concluded that the historical circumstances in this case do not fit the typical situation from which ways of necessity are implied and that even if they did, the easement would not have survived because it was not recorded.

¶ 2. On appeal, the petitioners claim they are entitled to an easement by necessity or by implication over the respondents' properties; or in the alternative, they seek an expansion of the common law in this state to recognize an easement by necessity where property is landlocked due to geographical barriers and due to the actions of the common owner and grantor, in this case the United States. We conclude that the petitioners have failed to establish entitlement to an easement by implication or by necessity either because of actions by the federal government or by geographical barriers. Not only were the parcels at issue not landlocked at the time of conveyance, but the petitioners themselves created their landlocked parcels when they conveyed away their highway access. We refuse to turn 100-plus years of Wisconsin common law on its head to accommodate such actions. Accordingly, we affirm the court of appeals.

I.

¶ 3. The facts are not in dispute. The petitioners and the respondents all own property that is located on Green Bay in the Village of Ephraim in Door County. The properties are situated between the waters of

Green Bay on the west and a bluff ranging in height from 37 to 60 feet on the east. The following is a diagram of the properties (lots and parcels) involved.

This diagram can be found in the record and is designated as Exhibit A attached to the petitioners' original complaint with additions and deletions for illustrative purposes. *Thomas v. Ashland, Siskiwit & Iron River Logging R.R.*, 122 Wis. 519, 520, 100 N.W. 993 (1904);

*Northern Pine Land Co. v. Bigelow*, 84 Wis. 157, 162, 54 N.W. 496 (1893).

¶ 4. Prior to 1854, the property involved was owned by the United States and was divided into three lots: Lot 2, the northernmost lot; Lot 3; and Lot 4, the southernmost lot. In 1854, the United States granted by patent Lot 4 to Ingebret Torgerson, but retained Lots 2 and 3. At the time that Lot 4 was severed from Lots 2 and 3, the United States did not retain a right-of-way through Lot 4 to get to Lots 2 and 3. At oral argument, it was explained that at the time of this conveyance by the United States, the eastern boundary of the lots extended to the east to what is now a public roadway. The lots were comprised of property both above and below the bluff with access to a public road-way from above. In 1882, the United States granted Lots 2 and 3 to Halvor Anderson.

¶ 5. At some point after the United States granted the lots, they were further subdivided into parcels.[1] After 1854, Lots 2, 3, and 4 were never fully owned by one person or entity, except that some unspecified parcels within Lots 2, 3, and 4 were owned by Malcolm and Margaret Vail during the years 1950 to 1963.

¶ 6. The petitioners' parcels are located in Lot 2, the northernmost lot. McCormick owns the northern-most parcel and the Schwabs own two adjacent parcels directly south of McCormick. Together the properties comprise over 1200 feet of frontage and over nine acres of property. Directly south of the Schwabs' parcels is a

---

[1] Throughout this decision, our use of "lots" pertains to Lots 2, 3, and 4 which were originally conveyed by the United States to Torgerson and Anderson. We shall designate the subdivided land from Lots 2, 3, and 4, which is now owned by McCormick, the Schwabs, and the respondents, as "parcels."

parcel owned by the Timmons within Lot 2, followed to the south by a parcel owned by the Lenzes, also in Lot 2; all of the remaining respondents' parcels follow sequentially to the south, located in Lots 3 and 4, with the parcel owned by Hobler being the southernmost parcel located at the southern boundary of Lot 4.

¶ 7. It was indicated at oral argument that the current eastern boundary line, the bluff line—which produced parcels above and below the bluff—was created at various unknown times.[2] The Schwabs' parcels were originally purchased by James' parents in the 1940s and were later gifted to James in 1965 and 1974. At purchase, the Schwabs' parcels extended east from the waters of Green Bay to property above the bluff where there was access to a public roadway and a house. Some time after the 1974 inheritance, the Schwabs conveyed the property above the bluff to James' relatives and retained the parcel below. McCormick also inherited her parcel which originally included land above and below the bluff with highway access from above, and she conveyed the property above the bluff to a third party, retaining the parcel below.

¶ 8. As they currently stand, both of the petitioners' parcels are bordered by water on the west and the bluff on the east. Because their properties are between the lake and the bluff, the petitioners claim their only access is over the land to the south, owned by the respondents, for which they do not have a right-of-way.

¶ 9. A private road runs north from Hobler's parcel across all of the respondents' properties

---

[2] According to the survey map contained in the record, it is apparent that some landowners, including at least one respondent, have retained property both above and below the bluff line.

terminating on the Lenz parcel. Timmons also has the right to use the private road. This is the road that the petitioners are seeking to extend for their use. Negotiations for an agreement to extend the road have failed.

¶ 10. In 1988, the petitioners petitioned the Village of Ephraim, pursuant to Wis. Stat. § 80.13 (1985–86), to extend a public road—North Shore Drive—to the private road beginning at the Hobler property northward over all of the respondents' properties to McCormick's property. Section 80.13 allows a landowner to request the local government, in its discretion, to construct a public roadway at the petitioning landowners' expense. *Id.* The Village of Ephraim board, however, declined the request finding that extending the road was not in the public's interest.

¶ 11. Consequently, the petitioners brought this declaratory judgment action seeking an easement by necessity or by implication to gain access to their land. The easement would include the perpetual right to travel, including the right for ingress, egress and for public utilities, over the now private road, which stretches over 15 of the respondents' parcels to the Lenz property, as well as the right to build a road over the Lenz and Timmons properties up to the McCormick property. The respondents filed motions to dismiss the amended complaint.[3]

¶ 12. The circuit court granted the motions to dismiss, concluding that the historical circumstances in this case do not fit the typical situation from which easements of necessity are implied. The court further

---

[3] Petitioners filed their initial complaint in May 1996. They then filed an amended complaint in August 1996. The respondents filed motions to dismiss against both complaints. Petitioners' brief and affidavit in opposition to the motions to dismiss were accepted by the circuit court.

stated that even if it found an implied retention of an easement over Lot 4 by the United States as of 1854, the respondents did not have actual or constructive notice of the existence of an easement and therefore, they took title to the land relieved of the burden or charge of the easement. The court of appeals summarily affirmed the circuit court's grant of the respondents' motions to dismiss.

## II.

¶ 13. Under Wis. Stat. § 802.06(2) (1995–96), a motion to dismiss for failure to state a claim shall be treated as a motion for summary judgment under Wis. Stat. § 802.08 (1995–96), if matters outside the pleadings are presented to the court. *M & I Marshall & Ilsley Bank v. Town of Somers*, 141 Wis. 2d 271, 285 n.9, 414 N.W.2d 824 (1987). In this case, matters outside of the pleadings were presented to the court which converted the motion to dismiss to one for summary judgment. *Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 608–09, 345 N.W.2d 874 (1984). A motion for summary judgment must be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980); § 802.08(2). We review summary judgment rulings independent of the circuit court. *Grams*, 97 Wis. 2d at 338–39.

## III.

¶ 14. The petitioners claim an easement by implication or by necessity over the respondents' properties. An easement is a "liberty, privilege, or

advantage in lands, without profit, and existing distinct from the ownership of the land." *Stoesser v. Shore Drive Partnership*, 172 Wis. 2d 660, 667, 494 N.W.2d 204 (1993). With an easement, there are two distinct property interests—the dominant estate, which enjoys the privileges granted by an easement and the servient estate, which permits the exercise of those privileges. *Krepel v. Darnell*, 165 Wis. 2d 235, 244, 477 N.W.2d 333 (Ct. App. 1991). An easement can be used only in connection with the real estate to which it belongs. *S. S. Kresge Co. v. Winkelman Realty Co.*, 260 Wis. 372, 376, 50 N.W.2d 920 (1952).

¶ 15. Easements by implication and by necessity are similar, but legally distinguishable concepts. Since the early 1900s, the public policy in Wisconsin has strongly opposed the implication of covenants of conveyance, i.e., easements. *Backhausen v. Mayer*, 204 Wis. 286, 288, 234 N.W. 904 (1931); *Miller v. Hoeschler*, 126 Wis. 263, 269–70, 105 N.W. 790 (1905); *see also Scheeler v. Dewerd*, 256 Wis. 428, 431, 41 N.W.2d 635 (1950) (easements can be acquired only by grant or prescription, and not by implication, but a grant may be subject to construction where its terms are ambiguous).

¶ 16. An easement by implication arises when there has been a "separation of title, a use before separation took place which continued so long and was so obvious or manifest as to show that it was meant to be permanent, and it must appear that the easement is necessary to the beneficial enjoyment of the land granted or retained." *Bullis v. Schmidt*, 5 Wis. 2d 457, 460–61, 93 N.W.2d 476 (1958) (quoting 1 THOMPSON, REAL PROPERTY § 390 at 630 (perm. ed.)).[4] Implied ease-

---

[4] The traditional elements of an implied easement are:

ments may only be created when the necessity for the easement is "so clear and absolute that without the easement the grantee cannot enjoy the use of the property granted to him for the purposes to which similar property is customarily devoted." *Bullis*, 5 Wis. 2d at 462 (quoting *Miller*, 126 Wis. at 270).

¶ 17. The petitioners have failed to establish a claim for an easement by implication. While a land-locked parcel may satisfy the necessity element, it is apparent from the amended complaint that the private road the petitioners seek to extend does not and has never extended to the petitioners' properties. They have failed to allege that any use by the United States was so obvious, manifest or continuous as to show that it was meant to be permanent.

¶ 18. Instead, the petitioners claim their parcels are landlocked and the use and enjoyment of their property is permanently and substantially impaired without having access to their property. This claim is more akin to an easement by necessity.

■

¶ 19. An easement of necessity "arises where an owner severs a landlocked portion of his [or her] property by conveying such parcel to another." *Ludke v. Egan*, 87 Wis. 2d 221, 229–30, 274 N.W.2d 641 (1979).

---

(1) common ownership followed by conveyance separating the unified ownership;

(2) before severance, the common owner used part of the property for the benefit of the other part, a use that was apparent, obvious, continuous and apparent;

(3) and the claimed easement is necessary and beneficial to the enjoyment of the parcel previously benefitted.

7 THOMPSON, REAL PROPERTY § 60.03(b)(4)(i) at 426 (Thompson ed. 1994). Wisconsin courts have not specifically adopted these elements as the law of this state and we do not do so here.

To establish an easement by necessity, a party must show common ownership of the two parcels prior to severance of the landlocked parcel, *Ruchti v. Monroe*, 83 Wis. 2d 551, 556, 266 N.W.2d 309 (1978), and that the owner of the now landlocked parcel cannot access a public roadway from his or her own property, *Ludke*, 87 Wis. 2d at 230. If this can be demonstrated, an easement by necessity will be implied over the land retained by the grantor. *Id.*

¶ 20. The petitioners argue that the United States ownership of all three lots prior to 1854 satisfies the common ownership requirement—a question never before addressed by this court. We conclude that we need not reach that issue because even if the United States' possession of the three lots could constitute common ownership, the petitioners have conceded that neither Lot 2, nor Lot 3 were landlocked when the United States conveyed Lot 4. Rather, at the time of conveyance, the eastern boundary of the lots was above and east of the bluff (the current boundary line). Access to a public roadway was possible above the bluff. A party may only avail himself or herself of an easement by necessity when the common owner severs *a landlocked portion* of the property and the owner of the landlocked portion cannot access a public roadway. *Id.* at 229–30. Because the United States never severed a landlocked portion of its property that was inaccessible from a public roadway, the petitioners have failed to establish the elements for an easement by necessity.

¶ 21. Nevertheless, petitioners insist that the property was effectively landlocked because of the geographical barriers inhibiting access. As the petitioners see it, their land was landlocked because the land to the south was owned by an individual, the land to the

east and north was bordered by a cliff and rocky terrain, and the land to the west was bordered by the waters of Green Bay. They cite to *Sorenson v. Czinger*, 852 P.2d 1124 (Wash. Ct. App. 1992) and *Teich v. Haby*, 408 S.W.2d 562 (Tex. Civ. Ct. App. 1966), in support of their position.

¶ 22. Wisconsin courts have never before recognized geographical barriers alone as circumstances warranting an easement by necessity.[5] In fact, case law suggests otherwise. This court stated in *Backhausen* that a way of necessity is not merely one of convenience, and "the law will not imply such a way where it has provided another method for obtaining the same at a reasonable expense to the landowner." *Backhausen*, 204 Wis. at 289.

¶ 23. While the petitioners have provided evidence that the cost of building a road over the bluff would cost approximately $700,000—an unreasonable expense, it is apparent that they consider other methods of access—a stairway, an elevator—unacceptable. Petitioners narrowly focus on vehicular access to the lake itself as the only possible way to enjoy this prop-

---

[5] The cases cited by the petitioners are distinguishable. In *Sorenson v. Czinger*, 852 P.2d 1124, 1127 (Wash. Ct. App. 1992), the easement was authorized under a state statute which allowed for private condemnation of land for a right-of-way for the construction of roads. Wisconsin does not provide for private condemnation and easements are viewed with disfavor. *Backhausen v. Mayer*, 204 Wis. 286, 288, 234 N.W. 904 (1931).

The question in *Teich v. Haby*, 408 S.W.2d 562, 564 (Tex. Civ. Ct. App. 1966), was whether the owner of the servient parcel had notice that the owner of the dominant parcel used an existing private roadway to access a public roadway. *Teich* involved the continued use of a private roadway, not the creation of an easement for use of a private roadway.

erty. Certainly it may be more convenient for the petitioners to seek an extension of the private road to their parcels rather than travel across the property above the bluff and navigate the bluff, but that in itself does not create the right to an easement by necessity. A grantor is not landlocked when he or she has difficulty getting from his or her land to a public road as long as he or she can get from his or her land to a public road. *See Ludke*, 87 Wis. 2d at 230. *See also Sicchio v. Alvey*, 10 Wis. 2d 528, 538, 103 N.W.2d 544 (1960) (Access to building at front, even though rear entry was used, does not allow for right-of-way by necessity to rear entry of store).

¶ 24. In this case, the petitioners had access to a public road, albeit not ideal or the most convenient access, which they sold off. Thus, the petitioners' current ownership of landlocked property resulted not from a grant of property to them but by their own acts in conveying away their highway access. They were not unwitting purchasers of landlocked property (stemming from the United States 1854 sale).

██

¶ 25. An easement by necessity only exists where an owner sells a *landlocked* parcel to another, in which case the law will recognize a way of necessity in the *grantee* over the land retained by the *grantor*. *Rock Lake Estates Unit Owners Ass'n v. Township of Lake Mills*, 195 Wis. 2d 348, 372, 536 N.W.2d 415 (Ct. App. 1995) (citing *Ludke*, 87 Wis. 2d at 229–30). The petitioners in this case are the grantors, not the grantees, and as in *Rock Lake Estates*, the conveyances which resulted in their landlocked property were made by the petitioners when they sold off the property above the bluff. We conclude that it would be contrary to this state's policy against encumbrances for this court to

award an easement to the petitioners over parcels of unrelated third parties under these circumstances.

¶ 26.　Finally, the petitioners assert that without an easement their property will be virtually useless because they will have no way to get to it. Thus, the petitioners renew their request for a "drastic" expansion of the law arguing that there is no rational basis for landlocked property. The petitioners suggest that this court set forth a "reasonable use" test that balances the equities by weighing the competing interests of the need and benefit to allow access by easement to develop otherwise useless land versus the detriment such a burden may place on other property to use an existing road. The petitioners insist that the benefit and policy towards development far outweigh any anticipated costs to the burdened property.

¶ 27.　In order to adopt the petitioners' proposal, we would have to ignore not only long-standing precedent in this state, but also well-established public policy as illustrated in our recording and conveyance statutes. Long ago this court recognized:

> It is so easy, in conveying a defined piece of land, to express either any limitations intended to be reserved over it, or to be conveyed with it over other land, that the necessity of raising any such grant or reservation by implication is hardly apparent. Courts of equity can afford relief where the grant is not of that understood by both parties to be conveyed, or so understood by one by inducement of the other. Such rights outside the limits of one's proper title seriously derogate from the policy of both our registry statutes and our statute against implication of convenants in conveyances. That policy is that a buyer of land may rely on the public records as information of all the conveyances, and

upon the words of the instruments for all rights thereunder.

*Miller*, 126 Wis. at 268–69.

¶ 28. More recently in *Kordecki v. Rizzo*, 106 Wis. 2d 713, 719 n.5, 317 N.W.2d 479 (1982), this court reiterated that a purchaser of real estate has three sources of information from which to learn of rights to the land he or she is about to purchase: (1) reviewing the chain of title; (2) searching other public records that may reveal other non-recorded rights, such as judgments or liens; and (3) inspecting the land itself. These sources may be irrelevant under the petitioners' proposal if someone with a landlocked piece of property desired a right-of-way through another person's property "in the interest of development."

¶ 29. The petitioners are effectively asking this court to sanction hidden easements. An easement which in this case was not created by, but was, according to petitioners, clearly intended by the United States at conveyance.

¶ 30. This court in *Backhausen* rejected such a position as unsupported and unreasonable. In *Backhausen*, the owner of the dominant estate suggested that when a record reveals former co-ownership of the dominant and servient estate, the purchaser of the servient estate should ascertain whether the servient of the two estates was of such a nature as to give the owner of the dominant estate a way of necessity over the servient estate which he was then purchasing. *Backhausen*, 204 Wis. at 291. This court held that a "purchaser of land without knowledge or actual or constructive notice of the existence of an easement takes title to the same relieved of the burden or charge of the easement." *Backhausen*, 204 Wis. at 289–90. *See also*

*Schmidt v. Hilty-Forster Lumber Co.*, 239 Wis. 514, 522, 1 N.W.2d 154 (1941). The petitioners have not alleged that the respondents knew or had actual or constructive notice that the United States created a way of necessity over their parcels by its 1854 conveyance. Because the respondents had no knowledge or notice, actual or constructive, that a way of necessity may have been created in 1854, we conclude that if any such burden existed, it was extinguished by later conveyances.

¶ 31. In sum, we conclude that the petitioners have failed to establish entitlement to an easement by implication or by necessity either because of actions by the United States or by geographical barriers. We further reject the petitioners' public policy arguments for placing development of landlocked parcels above all other interests. For these reasons, we conclude that the petitioners have failed to state a claim upon which relief can be granted. Accordingly, we affirm the court of appeals' decision dismissing the petitioners' declaratory judgment action.

*By the Court.*—The decision of the court of appeals is affirmed.