George Dufield, Irving Cummings, Daniel Cummings and Gary Watters, Plaintiffs-Respondents,
v.
Tom McCormick and Sally McCormick, Defendants-Appellants,
Carla Watters and JA & SR Rusnak, Defendants.
No. 04-1110.
Court of Appeals of Wisconsin.
Opinion Filed: February 23, 2005.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
This appeal arises from a dispute regarding the existence and location of an access road to serve the Lazy River Shores subdivision. Tom and Sally McCormick (McCormick) appeal a judgment declaring that the access road crosses a portion of their farm field. The court determined that owners of lots adjacent to McCormick's field own a fifty-foot easement over the field along their southern boundaries.
¶2 McCormick argues the evidence fails to support the trial court's determination of the existence and location of the easement. He alternatively claims he established exclusive ownership of the access by adverse possession. Because the record supports the trial court's determination, we affirm the judgment.

BACKGROUND
¶3 In 1962, Campfire Land Company, Inc., purchased land located on State Highway 54 with frontage on the Embarrass River. Over the next several years, Campfire sold twelve lots[1] making up an unplatted subdivision known as Lazy River Shores. None of the lots has direct access to the highway. Several of the deeds to the lots provi de for an exception to "that part lying within the bounds of the road." This dispute arose regarding the presence, or lack thereof, of any road.
¶4 In 1975, Campfire sold McCormick a nearly twenty-three-acre parcel separating the lots from the highway. It also sold McCormick lot 12 and Campfire's remaining land. Campfire's deed to McCormick's twenty-three-acre field states, "Excepting therefrom 66 feet of right of way for the private road that services the unrecorded plat of Lazy Rive r Shores." The deed did not, however, describe the location of the right-of-way.
¶5 In 1975 or 1976, a dispute arose over rights of access to the lots. In 1976, to resolve disputes, Campfire quitclaimed to Harold Strong[2] "an existing roadway of 66 feet in width running northerly on the west line of section 6, 811 feet more or less; thence northeasterly, 1500 feet more or less to the east [boundary]. Being that road that serves the unrecorded plat of Lazy River Shores." A surveyor testified that Strong's quitclaim deed described a parcel that ran along the subdivision's boundary just south of the lots, but that he saw no road in that location. At trial, McCormick presented additional evidence that no road existed on the parcel described in Strong's quitclaim deed.
¶6 Strong testified, however, that someone from Campfire told him that the right-of-way ran along the area south of the lots. Strong stated that the quitclaimed area had been surveyed and staked for a road, but that McCormick plowed up the surveyed area and removed the stakes. In 1977, Strong granted each of the lot owners a fifty-foot wide easement over the parcel described in his quitclaim deed. One of the lot owners, Irving Cummings, testified that the route was a "known easement" and he and other lot owners used it to access their lots.
¶7 In contrast, McCormick asserted that the easement should follow a track shown in 1971 and 1981 aerial photographs running first northerly and then curving northeasterly through the approximate middle of the subdivision. The plaintiffs (collectively, Dufield) contended that the right-of-way follows the southern lot lines described by the surveyor and Cummings.
¶8 The court observed that there was no dispute that Strong's right-ofway was sixty-six feet wide and commenced at the western edge of the section. However, the court determined that the various deeds to the lots were ambiguous "as to what the predecessors in title intended in the various deed references to `bounds of the road' and `road easements.'" Most of the deeds from Campfire stated that the conveyances were "less and excepting that part lying within the bounds of the road" and "subject to road and utility easements." The court concluded that the deeds were ambiguous as to the location of the right-of-way.[3]
¶9 The court considered extrinsic evidence to resolve the ambiguities. It acknowledged McCormick's assertion that the aerial maps and other evi dence revealed a visible track that ran from the highway to the subdivision in a north/south direction and, midway through Lot 2, "this track then turned northeasterly and appeared to transverse the middle of the remaining lots until reaching Lot 12." However, the court stated: "The court is satisfied that the track shown in photos does not follow the route of the 66 foot right of way for the road serving the Lazy River Shores." The court found that the track deviated from the easement described in the Strong deed and ended a substantial distance west of the eastern boundary. The court concluded: "A roadway that is located on the southerly lot lines more accurately conforms to the distance identified in the easement."
¶10 The court observed that McCormick's deed "excludes a 66 foot right of way for the private road that serviced the lots." The court found that Campfire surveyed the road at the time Strong received his quitclaim deed and the boundaries were staked, but evidence suggested that McCormick removed the stakes. The court determined that the preponderance of the evidence demonstrated that "Campfire intended the 66 foot roadway serving the subdivision lots to run north along the west line of section 6 from the highway to lot 1 and then northeasterly from the west section line ... immediately south of the southern lot lines, a distance of 1500 feet to the fence line to the east."
¶11 The court concluded, "Campfire's intent was to establish the road to the south of the Lazy River lot lines." It ordered that the lot owners owned a fiftyfoot wide easement over the disputed area. McCormick's appeal follows.

DISCUSSION

1. Existence of the Easement
¶12 When an easement is created by deed, we generally must look to that instrument in construing the relative rights of the parties. Hunter v. McDonald, 78 Wis. 2d 338, 342-43, 254 N.W.2d 282 (1977). The purpose of the court is to ascertain the parties' intentions. Rikkers v. Ryan, 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977). The interpretation of a deed is a question of law unless there is an ambiguity requiring resort to extrinsic evidence. Edlin v. Soderstrom, 83 Wis. 2d 58, 69, 264 N.W.2d 275 (1978).
¶13 When there is an ambiguity, the determination of the parties' intent is a question of fact. See Patti v. Western Mach. Co., 72 Wis. 2d 348, 353, 241 N.W.2d 158 (1976). We uphold the trial court's fact finding unless it is clearly erroneous. WIS. STAT. § 805.17(2).[4] It is not our function to review questions as to weight of testimony and credibility of witnesses. These are matters to be determined by the trier of fact, and its determination will not be disturbed where more than one reasonable inference can be drawn from credible evidence. Valiga v. National Food Co., 58 Wis. 2d 232, 244, 206 N.W.2d 377 (1973). When reviewing findings of fact, we look to the record for evidence to support the court's findings, not for evidence to support findings the court did not make. See Estate of Dejmal, 95 Wis. 2d 141, 154, 289 N.W.2d 813 (1980).
¶14 The record supports the trial court's finding of the existence of a right-of-way to access the lots comprising Lazy River Shores subdivision. There is no dispute that the deeds admitted at trial were imprecise and ambiguous with respect to its location. McCormick's deed referred to the "right of way for the private road that services the unrecorded plat of Lazy River Shores." McCormick acknowledged at trial that his deed contained a provision for a road providing access to the subdivision, even though he disputed its location. The lot owners' deeds referred to "the bounds of the road," "subject to road and utility easements," and "an existing roadway." Strong testified that a road accessing the lots had been surveyed, but McCormick removed the stakes and plowed the area over. The documentary and the extrinsic evidence permitted the court to find that Campfire intended to create a private road for access to the Lazy River Shores lots. Because the court's finding that a right-of-way existed is not clearly erroneous, it is not overturned on appeal.

2. Location of the Right-of-Way
¶15 McCormick challenges the court's determination of the location of the right-of-way. This contention essentially challenges the court's finding of fact as to Campfire's intent. Strong's, the surveyor's and Cummings' testimony, as well as Strong's deed, support the trial court's finding as to Campfire's intent with respect to the location of the right-of-way. In any event, because the deeds fail to adequately locate the easement, the court had the responsibility to determine its location.
It is well settled that if the location of a right of way is not defined by the grant, a reasonably convenient and suitable way is presumed to be intended[.] If a location is not selected by either the servient or the dominant owner and they cannot agree upon a location, a court of equity has the power affirmatively and specifically to determine the location of the servitude. The reasonable convenience of both parties is of prime importance and the court cannot act arbitrarily, but must proceed with due regard for the rights of both parties.
Werkowski v. Waterford Homes, Inc., 30 Wis. 2d 410, 417, 141 N.W.2d 306 (1966); see also 25 AM JUR.2D EASEMENTS AND LICENSES, § 68 at 564-65 (2004).
¶16 Here, the location of the right-of-way could not be ascertained from the language of the deeds. Because the deeds failed to locate the easement, and the parties could not agree on a location, the trial court, as a court of equity, had the power to determine its location. See Werkowski, 30 Wis. 2d at 417.
¶17 The evidence McCormick offered at trial suggested that lot owners used a track to the north of his field through the middle of the lots as the right-of-way. However, Cummings disputed this assertion. Cummings stated he owned his lot since 1983 and he never observed a northern road for purposes of accessing the lots.
¶18 The record shows that the northern area was lowland and the northern track, if any, was too muddy to be of use, and virtually cut some of the lots in half. Strong testified the northern route caused disputes and was abandoned. Strong also testified that the area to the south of the boundaries had been staked and surveyed, although McCormick had removed the stakes and plowed the area. The surveyor testified that the description in Strong's quitclaim deed most closely described a right-of-way to the immediate south of the Lazy River Shores lot boundaries.
¶19 It is the trial court's duty to resolve conflicts and inconsistencies in testimony. See WIS. STAT. § 805.17(2). Based on Strong's testimony, as well as that of Dufield, Cummings and the surveyor, the court was entitled to find that any previously existing track to the north had been abandoned because it was inconvenient and gave rise to disputes. The record supports the court's determination that the route south of the lot boundaries was the more reasonable location for the right-of-way.
¶20 An equitable remedy is reviewed for a misuse of discretion. See Mulder v. Mittelstadt, 120 Wis. 2d 103, 115, 352 N.W.2d 223 (Ct. App. 1984). "While reasons must be stated, they need not be exhaustive." Burkes v. Hales, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991). "It is sufficient that they indicate to the reviewing court that the trial court `undert[ook] a reasonable inquiry and examination of the facts' and `the record shows that there is a reasonable basis for the ... court's determination.'" Id. at 590-91. Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions." Id. at 591 (citations and quotations omitted). The test is not whether we would have decided the matter differently; "it is enough that a reasonable judge could have so concluded." Schneller v. St. Mary's Hosp. Med. Ctr., 155 Wis. 2d 365, 376, 455 N.W.2d 250 (Ct. App. 1990), aff'd, 162 Wis. 2d 296, 470 N.W.2d 873 (1991). The record before us discloses that the trial court undertook a reasonable inquiry and there is a rational basis for the court's determination. Therefore, we do not disturb it on appeal.
¶21 McCormick nonetheless argues that the court's location of the easement along the northern portion of his parcel conflicts with the language in the lot owner's deeds, rendering superfluous their references to excepting of "the bounds of the road," and "subject to road and utility easements." McCormick's argument rests on the faulty premise that the court was relying on documentary evidence to locate the right-of-way. It is undisputed that the deeds were ambiguous and the court was entitled to rely on extrinsic evidence. Because it is undisputed that the documents failed to locate the right-of-way, the court properly relied on extrinsic evidence to determine a reasonable location. See Werkowski, 30 Wis. 2d at 417.
¶22 McCormick also suggests that his 1975 deed, stating that Campfire deeded to him "all" of its remaining property, predates the 1976 deed quitclaiming a road to Strong, thereby rendering Strong's conveyance a nullity. McCormick's argument neglects, however, the language in his deed stating: "Excepting therefrom 66 feet of right of way for the private road that services the unrecorded plat of Lazy River Shores." This language supports the trial court's determination that Campfire intended to create a right-of-way over McCormick's parcel.

3. Adverse Possession
¶23 Alternatively, McCormick argues that because it is undisputed that for over twenty-eight years, his field was "usually cultivated or improved," he established possession and occupation under WIS. STAT. § 893.26(4)(a), and the trial court erroneously denied his adverse possession claim. He also claims that during the growing season, the lot owners did not use his field, thereby acquiescing in his use. We reject his arguments.
¶24 It has been held that an easement may be lost by adverse possession, see Hensel v. Witt, 134 Wis. 55, 57, 113 N.W. 1093 (1907), by exclusive dominion exercised over property in which an easement is claimed with no use allowed of the property for the purposes of the easement, or by maintenance of an obstruction of a permanent character which prevents the enjoyment of the easement. See 25 AM.JUR.2D, EASEMENTS AND LICENSES § 102, at 600 nn.3, 4 (2004). Persons seeking to establish title to property by adverse possession must show that they have used the disputed property in a "hostile, open and notorious, exclusive and continuous" manner for at least twenty years. Leciejewski v. Sedlak, 110 Wis. 2d 337, 343, 329 N.W.2d 233 (Ct. App. 1982); see also WIS. STAT. § 893.25. Evidence necessary to establish adverse possession must be strictly construed against the party claiming adverse possession. Ludke v. Egan, 87 Wis. 2d 221, 231, 274 N.W.2d 641 (1979).
¶25 The trial court found
McCormick has not farmed the portion of the roadway running along the southern line of the various lots to the open and notorious exclusion of all others. Individuals have traveled over the easement granted by Strong south of the lot lines of all lots 1 to 11 several times each year between fall harvest and spring planting. Since McCormick's possession was not exclusive to the use of the fifty-foot easements, the easements granted by Strong remain in force.
¶26 The record supports the trial court's determination. Construing the evidence strictly against McCormick, see id., the record does not show that Dufield and the other lot owners lost their easement rights. Cummings testified that he used his property for hunting and fishing and, since he acquired his lot in 1983, he has driven across the route over the McCormick's field to access his lot and does so "to this day." He described the route as a "known easement" and stated that people regularly used it to access their lots. He indicated that the area sometimes was plowed and planted with crops but was used for hay, grass or "nothing" other years.
¶27 McCormick contends that because Cummings indicated he used the field when it was not plowed or planted with crops, he thereby acquiesced in McCormick's use and forfeiting his claim of easement. McCormick's argument relies on inferences derived from Cummings' testimony to the effect that he did not drive with the intent to destroy crops or when the route was impassable.
¶28 Cummings stated:
[W]hen he doesn't have it plowed, I go across the plowed field or easement. In the wintertime there's snow. I drive across the inside lotinside of the lot when there was snow or it was, you know, when it is wet and you can't get in there, otherwise I drove across the field. Sometimes he had it plowed. Sometimes there was hay on it. I didn't go in there and intentionally destroy his crops. I went in there and went to my properties and drove all the way across to the end on lot 433.
... I drive across there whenever I have to.
¶29 Cummings' testimony permits a finding that although there were occasions when Cummings did not drive across the field, he regularly used the easement, permitting the inference the court drew that McCormick's farming was not to the "open and notorious exclusion of all others."[5] Thus, McCormick's inference that Cummings acquiesced in McCormick's exclusive dominion, with no use allowed for the purposes of the easement, conflicts with that drawn by the trial court. However, when two or more reasonable inferences may be drawn, we are bound to accept the inference drawn by the factfinder. See Valiga, 58 Wis. 2d at 244. We decline McCormick's i nvitation to violate our standard of review.[6]
¶30 McCormick further contends that Cummings' "sporadic trespass" and "casual reentry" is insufficient to apprise the owner of an opposing claim, citing Pierz v. Gorski, 88 Wis. 2d 131, 137, 276 N.W.2d 352 (Ct. App. 1979), and Otto v. Cornell, 119 Wis. 2d 4, 7, 349 N.W.2d 703 (Ct. App. 1984). The record, however, describes more than sporadic trespass or casual reentry by the lot owners. Also, McCormick's reliance on these cases is unpersuasive because they do not involve adverse possession of an easement or right-of-way.
¶31 The record supports the trial court's denial of McCormick's adverse possession defense. In view of Cumming's testimony that he and other lot owners used the field to access their lots, the record permits the finding that McCormick's use of the field was not exclusive. Consequently, the elements of adverse possession were not satisfied.[7]
By the Court.  Judgment affirmed.
NOTES
[1] The lots are numbered one through twelve.
[2] Harold Strong is the predecessor in title to the lot that Mary Watters now owns.
[3] The court's conclusion that the deeds were ambiguous is not challenged on appeal.
[4] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[5] "Use of another route does not affect the interest in an easement, unless there is an intentional abandonment of the former way." 25 AM.JUR.2D EASEMENTS AND LICENSES, § 98 at 597 (2004).
[6] McCormick's contention, that the appropriate standard of review for his adverse possession issue is the "application of a statute to a particular set of facts is a question of law," neglects the trial court's role in arriving at a particular set of facts from conflicting and inconsistent testimony. See WIS. STAT. § 805.17(2).
[7] Because the lack of exclusivity supports the trial court's determination, we do not address alternative grounds offered by the trial court, such as the court's conclusion that the purchase of land from a common grantor with reference to boundaries clearly marked on the ground precludes a claim of adverse possession.